Scudder v. Atwood.

CLIFTON R. SCUDDER, Respondent, v. JOHN C. ATWOOD, Appellant.

St. Louis Court of Appeals, December 19, 1893.

1. **Illegal Trusts**: ENFORCEMENT IN EQUITY. A court of equity will not lend its aid to the enforcement of an illegal trust, and accordingly will not, at the suit of a debtor who has conveyed his property to hinder or defraud his creditors, compel a reconveyance to him.

2. ———: PLEADING. Under the general issue evidence may be received, which tends to show a cause of action never existed, or that it was void *ab initio*. Accordingly, when a petition alleges a lawful trust in favor of the plaintiff and seeks to enforce it in equity, it may be shown under a general denial that the trust was made for fraudulent purposes.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED.

*Geo. W. Taussig* for appellant.

(1) The testimony of plaintiff discloses a plan to conceal his property from his creditors by placing it in the name of defendant, and the successful execution of the plan; that the plaintiff by such fraudulent concealment of his property from March, 1888, to April, 1892, completely exhausted his creditor, so that the latter was compelled to take a small per cent. of the debt due from plaintiff; that now the plaintiff "has gotten rid of his creditor," and seeks the aid of a court of equity to recover back the property. "The door of a court of equity is always shut against such claimants." 1 Pomeroy's Equity Jurisprudence, sec. 397, *et seq.*; *Trimble v. Doty*, 16 Ohio St. 118; *Nellis v. Clark*, 20 Wend. 24;

*St. John v. Benedict*, 6 Johns. Ch. 117; *Perkins v. Savage*, 15 Wend. 412; *Garrett v. Kansas Coal Co.*, 111 Mo. 279; *Kitchen v. Greenebaum*, 61 Mo. 116; *Sumner v. Sumner*, 54 Mo. 340; *Holt v. Green*, 73 Penn. St. 198; *Steadman v. Hayes*, 80 Mo. 319. (2) The petition is based upon an express trust, "that defendant, upon plaintiff's request, and upon the understanding that defendant should never be called upon to pay for the same or any part thereof, and for the purpose of holding the same for the use and benefit of plaintiff, subscribed, and agreed to pay for, thirty-nine shares, * * * to be issued in defendant's name for the use and benefit of plaintiff, and in trust for him. The answer contains a general denial of these averments. Under the pleadings, the plaintiff was obliged to show such an express trust, and it was competent for defendant to show, under the general denial, that the alleged trust was void *ab initio*, and that no legal contract existed. *Hardwick v. Cox*, 50 Mo. App. 509; *Wilkerson v. Bowman*, 82 Mo. 672; *Greenway v. James*, 34 Mo. 328; *Chapman v. Currie*, 51 Mo. App. 40; *Tyler v. Larimore*, 19 Mo. App. 445; *Carter v. Shotwell*, 42 Mo. App. 663; *Thomas v. Ramsey*, 47 Mo. App. 84; *White v. Middlesworth*, 42 Mo. App. 368; *Sprague v. Rooney*, 104 Mo. 349; *Hoffman v. Parry*, 23 Mo. App. 20; *Corby v. Weddle*, 57 Mo. 452; *Eidson v. Hedges*, 38 Mo. App. 52.

*Walter B. Douglas* for respondent.

The appellant's contention, that he is not liable in this suit for the reason that he and respondent entered into a fraudulent combination to cheat respondent's creditor, is an affirmative defense, and, not having been pleaded, was not a matter in issue in the court below and will not be considered here. *Musser v. Adler*, 86

Mo. 445; *St. Louis, etc. Ass'n v. Delano,* 37 Mo. App. 284; s. c., 108 Mo. 217; *Cummiskey v. Williams* 20 Mo. App. 606; *Moore v. Ringo,* 82 Mo. 468; *Reese v. Garth,* 36 Mo. App. 601; *Mize v. Glenn,* 38 Mo. App. 98; *Sybert v. Jones,* 19 Mo. 86; *Suit v. Woodhall,* 116 Mass. 547; *Foster v. Hall,* 12 Pick. 89.

BOND, J.—This is a proceeding in equity for the purpose of obtaining a decree or judgment, compelling the defendant to assign and deliver to the plaintiff a certain certificate, number 8, for two shares of stock in the St. Louis Electric Light & Power Co., and divesting all title in said two shares out of defendant and vesting the same in plaintiff.

The petition stated in substance that, at or immediately prior to the organization of said corporation, at plaintiff's request and upon the understanding that he, the said defendant, should never be called upon to pay the same or any part thereof, and for the purpose of holding the same for the use and benefit of plaintiff, the defendant subscribed for thirty-nine shares of the original capital of said company; that plaintiff was at said time insolvent, and, having paid to the company's first board of directors the subscription price of said stock, caused and directed the certificate for said thirty-nine shares to be issued in the name of defendant, and defendant's name to be entered upon the books of said company as the owner of said thirty-nine shares; that the certificate so issued to defendant included, among others, to-wit, number 8, for two shares, *"all of which was done in pursuance of said understanding that said defendant should not be called upon to pay for said stock, or any part thereof, and for the purpose of defendant's holding said thirty-nine shares in every part thereof for the benefit of plaintiff and in trust for him;"* that defendant has never paid any consideration for any of the

shares of stock so issued to him, but that the full sub-
scription price therefor has been paid by plaintiff, and
that the plaintiff has always been the actual owner
of all of said shares of stock, though issued in the name
of defendant. The petition then alleges an increase of
the capital stock of the company on March 11, 1890,
and another increase on May 2, 1892. It then admits
that defendant has issued to plaintiff all the shares of
stock originally issued to him, except the two shares
evidenced by said certificate, number 8. It then alleges
that since June 14, 1888, plaintiff has been entitled to
have said certificate, number 8, for two shares trans-
ferred and delivered to him *"by reason of the trust
established as aforesaid;"* that plaintiff then demanded
of defendant to assign and deliver certificate, number
8, to plaintiff *"in fulfillment of said trust,* but that
defendant refused to do so, as in equity and good sense
he is bound to do by *reason of the trust aforesaid."*
Wherefore the petition asks for the relief compelling
the defendant to assign and deliver said certificate, and
divesting title out of him.

The answer admits the insolvency of plaintiff, and
avers that defendant was employed by plaintiff and one
D. W. Guernsey, a co-incorporator of the plaintiff to
act for them in the purchase of certain electrical appli-
ances and machinery, which were among the assets of
the assigned estate of the Guernsey Furniture Com-
pany, in which plaintiff and said Guernsey had been
stockholders; that defendant purchased said property
for the benefit of plaintiff and Guernsey at the
assignee's sale for the sum of $3,000, which money was
furnished by plaintiff and said Guernsey; that the title
of the property so bought was taken in defendant's
name, and was conveyed thereafter to the St. Louis
Electric Light Company upon its incorporation as the
basis of the capital stock of that corporation, to-wit,

$8,000; that the only consideration received by the defendant for this conveyance was seventy-eight shares of the full paid stock of said corporation, among which were the certificates of stock set out in the petition; that defendant thereupon at once transferred to plaintiff thirty-seven shares, and to Guernsey's assignee's thirty-nine shares of the stock issued to him, in full discharge of all the claims against this defendant by reason of the premises.

The answer further avers that said certificate, number 8, for two shares was delivered to him for his services to said company, and to said Scudder, as his absolute property.

The reply of plaintiff was a general denial.

There was a judgment in the court below in accordance with the petition. The material facts shown on the trial were, to-wit, that the plaintiff and D. W. Guernsey were officers and stockholders in the Guernsey Furniture Company, which made an assignment for the benefit of its creditors in January, 1888; that among the assets thus assigned was an electrical plant, which the assignee was ordered to sell at public auction; that plaintiff and said Guernsey desired to purchase this asset; that at the time plaintiff and said Guernsey were indebted individually to one George W. Parker as joint makers on twenty-three notes for $450 each, dated December 15, 1886, and payable respectively from fourteen to thirty-six months after date; that, to enable them to make the purchase, respondent arranged with Mr. Cupples for a loan of $3,000, one-half for himself and one-half for Mr. Guernsey, respondent being responsible for the whole amount; that, at respondent's request, and with the money borrowed from Mr. Cupples, the electrical plant was purchased by appellant at a public sale of the assets of the assigned estate; that thereupon the corporation, now known as the St.

Louis Electric Light and Power Company, was organized by subscription of seventy-eight shares made by appellant, and of one share each by respondent and Mr. Guernsey; that Guernsey was chosen as president; appellant as vice-president, and respondent as treasurer; that thereupon one share of stock each was issued to Scudder and Guernsey, and seventy-eight shares were issued to appellant, who at once transferred thirty-nine of them by the direction of Mr. Guernsey to Geo. D. Barnard, and indorsed thirty-seven of the remainder to Scudder, who at once transferred them as collateral security to Mr. Cupples. This transaction left in appellant's hands only certificate, number 8, for two shares of the stock in question, which he has retained ever since, and which is the subject-matter of the present suit.

Respondent states with reference to the retention of these two shares that he said to appellant: "John, all this stock will be out of my hands; I won't have any at all, as it will be in Mr. Cupples' hands for security. You had better keep this certificate for two shares to indemnify yourself as stockholder;" that nothing was said about payment of appellant for his services "more than I (respondent) asked him to hold the stock to be a director in the company, as it was necessary according to law;" that the reason why the stock was not issued in his (Scudder's) name was that he was afraid Parker (an existing creditor) would get hold of it; that he, Scudder, told appellant that he "didn't want to take any chance of Parker jumping on it."

Matters remained in this plight until about April 25, 1892. During this interval the business of the corporation prospered, and its stock was twice increased. New shares representing the increment of its assets were issued to appellant in lieu of certificates formerly held by him (except for certificate number 8), and were

by him indorsed and delivered to respondent, who thereupon indorsed all of them over to Cupples from whom respondent had borrowed a part of the money used by him in paying for a portion of the increase of the capital stock, the remainder of the increase having been paid for in profits of the business.

During this interval, to-wit, February 13, 1891, Parker, the creditor for $4,337, accepted fifty per cent. thereof as satisfaction of his claim therefor against Scudder and Guernsey from the latter. About fourteen months thereafter Scudder contributed to Guernsey one-half of what Guernsey had paid Parker. A short time after this Scudder wrote the following letter, and got the following reply:

"St. Louis Electric Light and Power Co.

"St. Louis, Mo., April 25, 1892.

"*Mr. J. C. Atwood,*

"Dear Sir.—As per notice mailed you, we will hold our annual meeting on Monday, May 2.

"As matters now stand, I suppose you will not put in an appearance on that day; if such is the case, I should like very much to have the stock which now stands in your name transferred. Please let me know as soon as possible your wishes in the matter and oblige,                    Yours truly,

"C. R. Scudder."

To this, Atwood answered as follows:

"St. Louis, Mo., April, 28, 1892.

"*Mr. C. R. Scudder, Secretary and Treasurer St. Louis Electric Light and Power Co.,*

"Dear Sir:—Yours of the 25th inst. received. As to whether I attend the annual meeting on the 2nd prox. (of which I stand fully advised) or not, I judge it makes but little difference and will not prove at all detrimental to proceedings. If it is contemplated my absence and non-representation of my stockholding

will inconvenience proceedings, I am ready to either attend or to send my proxy, to be voted only on the proposition to increase the capital and alter corporate name.

"Touching your intimation that my continuance as a stockholder is distasteful to yourself, and your suggestion as to transferring it, I offer you the option of purchasing my interest for $2,250. I judge that is a reasonable estimate of its value, inasmuch as the original capital of the company was $8,000 and was increased to $30,000, and is to be increased again one hundred and fifty per cent. out of the accumulated profits, augmented value of property, franchise, etc., and considering that the earning capacity of the business will be likely to continue as it has for the past few years, if not increase.

"If this proposition is not accepted and I do not dispose of the stock in the meantime to other parties, I shall expect, if there is a re-issue of stock on the capital being increased, to receive a number of shares of such new stock proportionate with my present holding to which I will be entitled, whereupon I will surrender my present certificate.

"Yours truly,

"J. C. ATWOOD."

With reference to the foregoing letters respondent said "he could not get the stock in his own name until he got the Parker matter out of his way," and further made answer as follows to the following question, to-wit: "And that is the reason you could not ask him to transfer it back sooner, for you couldn't get the stock in your name until you got the Parker matter out of the way?" *A.* I didn't want to do it until I had gotten the Parker matter out of the way." *Q.* "Because, if you had the stock transferred to you, he (Parker) would come down on you and collect his

just debt?" *A.* "That would be the danger; yes, sir." *Q.* "Don't you remember that you told Atwood, at the time of the original transaction for the purchase of this plant, that you didn't know when Parker might bother you, and you wanted to get it in his name until you got straightened up?" *A.* "Yes, sir; I said that, and that is the fact, too; that is what I did say."

There was a breach of friendship between respondent and appellant in February, 1892.

Appellant's testimony was that he was asked by respondent to buy in the electric plant which had been conveyed to the assignee of Guernsey Furniture Co., and join in an incorporation based on this plant as its capital stock; that they would give him enough stock to be an officer and director in the proposed corporation, and enable him to "perform the functions expected of him in the company;" that he attended the sale, bought in the property for $3,000, of which Guernsey and Scudder each furnished one-half, transferred the identical property to the corporation thereafter organized upon a paid up capital of $8,000; that thereupon all the stock, except one share each to Scudder and Guernsey, having been issued to appellant, he transferred thirty-nine of said shares by indorsement to Guernsey, and thirty-seven in the same manner to Scudder; that, as to the two remaining shares (certificate No. 8) Scudder said: "Here, take them; these are yours. I am sorry I cannot give you more, but you know my circumstances, and I would do it if I could." Appellant told him: "It was all right and to let the thing stand as it was;" that he was given to understand that they were given in consideration of services.

There are only two questions presented on this appeal: *First.* Whether or not respondent is entitled to a decree under the pleadings and evidence, vesting title in himself to certificate, number 8, for two shares

of stock in execution and performance of the trust alleged in his petition. *Second.* Whether or not, if not equitably debarred from such relief, respondent is *under the evidence* entitled thereto?

Under the first inquiry the essential question is the scope of the evidence admissible under the general denial contained in the answer. Under our practice act the rule is that all defenses, which do not disprove the allegations necessary to the support of the plaintiff's case, must be affirmatively pleaded in the answer. An obvious corollary to this rule is that, under the general issue, evidence may be received which tends to show that the cause of action *never existed* or that it was void *ab initio. Greenway v. James,* 34 Mo. 326; *Sprague v. Rooney,* 104 Mo. 360; *Hardwick v. Cox,* 50 Mo. App. 513; *White v. Middlesworth,* 42 Mo. App. 373; *Wilkinson v. Farnham,* 82 Mo. 672; *Musser v. Adler,* 86 Mo. 445; *St. Louis, etc., Association v. Delano,* 108 Mo. 217.

In the case at bar respondent admitted on the witness stand that he had caused the two shares of stock to be put in appellant's name in order to screen them from respondent's creditor, Parker, and that, he "didn't want to get the stock in his (respondent's) name, until he had gotten the Parker matter out of the way," and that, to that end, he made no demand upon appellant for the transfer of the certificate for these two shares of stock until he had settled Parker's claim. There could not be fuller or more positive proof of the *character* of the trust assumed by appellant in taking the stock in his name and retaining it thereafter, than is afforded by this testimony of respondent. It is also apparent that the *trust* thus established in respondent's evidence is repugnant to, and disproves, the trust alleged and set forth in respondent's petition, and proves that no such trust as the latter ever existed, and that the one in fact created was illegal in its inception.

It follows, therefore, according to the definition of the issues raised by the general denial, that it was competent thereunder in this case to adduce evidence of the real character of the fraudulent trust created by respondent, and assumed by appellant, in the issuance of the stock sued for in appellant's name. Such evidence, being receivable generally under the general denial contained in appellant's answer, was, for a stronger reason, admissible, since it appeared in the testimony of respondent and as a part of this case. *Hudson v. Wabash Railroad*, 101 Mo. 30. In the latter case the rule is laid down, that even strictly affirmative defenses need not be specially pleaded, if the evidence of the plaintiff disclosed a fact (contributory negligence) which absolutely defeats his right of action and disproves his own case. (Petition for negligent injury.)

That the unlawful trust, shown by the evidence in overthrow of the express trust alleged in the petition, is not one that can be enforced in a court of equity, is established beyond all controversy. *Nellis v. Clark*, 20 Wend. 24; Pomeroy on Equity Jurisprudence, section 401; Beach on Modern Equity Jurisprudence, section 78; *Kitchen v. Greenabaum*, 61 Mo. 110; *Taylor v. Von Schrader*, 107 Mo. 228; *Larimore v. Tyler*, 88 Mo. 66; *Sumner v. Summers*, 54 Mo. 340. As said by the supreme court of the United States in the recent case, quoting from Chancellor Walworth: "Wherever two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interfere to relieve either of those persons, as against the other, from the consequences of their own misconduct." *Dent v. Ferguson*, 132 U. S. 66; *Bolt v. Rogers*, 3 Paige, 157.

Our conclusion is that the judgment of the lower court must be reversed. All concur.