ANNA M. HAILL AND VIOLET HAILL, RESPONDENTS, v. CHAMPION SHOE MACHINERY COMPANY, AND NEW AMSTERDAM CASUALTY COMPANY, APPELLANTS.—71 S. W. (2d) 146.

St. Louis Court of Appeals.   Opinion filed May 8, 1934.

.632

*Green, Henry & Remmers* for appellants.

*Bartley & Mayfield* for respondents.

SUTTON, C.—This is an action to recover compensation under the Workmen's Compensation Act. Plaintiff Anna M. Haill is the widow of Anthony P. Haill, and plaintiff Violet Haill is his daughter.

Anthony P. Haill, while in the employ of defendant Champion Shoe Machinery Company, met with an accident, which resulted in his death. The Champion Shoe Machinery Company was insured against liability, under the Workmen's Compensation Act, by defendant New Amsterdam Casualty Company. The hearing before the Workmen's Compensation Commission resulted in an award in favor of plaintiffs, from which defendants appealed to the circuit court. From the judgment of the circuit court, affirming the award of the commission, defendants have appealed to this court.

The defendants insist here that the court erred in not setting aside the award of the commission for the unreasonable refusal of the employee to submit to medical treatment.

The accident, which resulted in the death of the employee, occurred at the employer's plant in the City of St. Louis, on December 23, 1931.

Mrs. Haill testified that when her husband came home on the day of the accident, his right hand was bandaged; that she unbandaged his hand, and found a wound between the ring finger and small finger; that he said that he turned on a light and stumbled over a scrap of iron and fell on a file, the file running into the web of his hand; that he had been given first aid at the plant; that she bathed his hand in hot water in which she had put some sort of antiseptic; that she bathed his hand every evening when he came home until January 2, 1932; that the hand was looking fine and showing improvement, and was healed from the outside; that there was no swelling up to January 2nd; that she noticed no marks or streaks on his hand or arm, and that he made no complaint of pain; that on January 2nd, when he came home, his hand had swollen, and he went to Dr. Schmiemeier; that on January 4th, a fever set in, and he was taken to Alexian Brothers Hospital, where he was examined and treated by Dr. Carroll Smith; and that on January 7th he died.

Dr. H. A. Schmiemeier testified, for plaintiffs, that he examined Haill on January 2, 1932, and found a punctured pussy wound on the right hand between the fourth and fifth fingers on the palmar surface; that it was an angry looking wound; that he cleaned the wound and put on an antiseptic pack; that he went to see him and treated him at his home on January 4th, and saw him the next morning at Alexian Brothers Hospital, and referred the case to Dr. Carroll Smith because of an infection which was becoming general; that Haill died from septicaemia; that a man receiving an injury such as Haill received should have a doctor's care from the beginning; that doctors are always dreading septicaemia from such injuries; that Haill may have had the most competent medical attention and still have developed septicaemia; that when he first saw him there was no evidence of septicaemia.

Dr. Carroll Smith testified, for defendants, that he examined Haill at the Alexian Brothers Hospital on January 5, 1932; that he had a temperature of 99.4, a wound on his right hand, no enlarged glands, and some redness of the arm around the armpit; that he died from septicaemia on January 7th; that the only cause he could find for the septicaemia was the injury to his right hand; that septicaemia often comes from pin punctures; that it was unfortunate that this man did not have medical treatment in the beginning; that such a case should be treated by a man who knows how to treat it; that he would not say that had he treated this man the result would have been different, but he would say that if he had been given competent medical treatment in the beginning the chances of septicaemia would have been much minimized and probably would not have occurred, although it was speculative; that where he had treated such cases under proper conditions immediately following the injury he did not recall any bad result; that with the best of care bad results sometimes happen.

John Lateok testified, for defendants, as follows: "I do clerical work at the Champion Shoe Machinery Company, and was working there in December, 1931, and had charge of the first-aid station. I treated Haill on the day of his injury. There was a brown looking hole in the right hand between the third and fourth fingers. It appeared to be a half inch deep, possibly more. I told Haill to go to a doctor as I was bandaging his hand. As first-aid treatment I applied oil of salt and washed the wound thoroughly and put on an alum compound and bound it up. I had no medical experience except first aid which I had been doing for two years. Haill was told that day, and the next day, and the third day, each time he came in for medical attention, he was to go to a doctor, that the best thing for him to do was to go to a doctor. He said he thought it was not necessary, and did not see any reason for losing time, and he wanted to go along a day or two longer. The hand looked all right and it seemed as if it was going to heal up. I treated this man the first day, and continued to treat him after that. I used oil of salt to wash out the wound until it stopped bleeding. The wound looked jagged straight down in between the fingers. I asked him, 'How did you do this?' and he explained, and I said, 'It looks kind of bad. I don't know how deep it is. I think I ought to send you to a doctor.' I said, 'You go to a doctor.' I did not send him to any doctor because he refused to go. I repeatedly told him to go to a doctor, on the following day and the third day. I told him it was a bad wound, he should go to a doctor. I insisted he should go to a doctor. I did not tell him what doctor to go to. I treated his hand every day from December 23rd to January 1st. The hand showed improvement. I did not notice any swelling of the hand. His hand seemed to be getting well, and after I saw it was getting well, I did not insist upon his going to a doctor. The hand

looked like it was getting well three or four days after the injury. Nothing that I could see indicated a development or danger of septicaemia. After the injury he was able to work every day, and did not lose any time. I did not tell him that if he wanted to go to the doctor he could, but I suggested the first thing for him to do was to go to a doctor. I did not tell him what doctor to go to."

B. S. Held testified, for defendants, as follows: "I am superintendent for the Champion Shoe Machinery Company. I knew Anthony P. Haill. I saw him on the day of the accident. I saw his hand was bandaged, and asked him if he thought he had not better go to a doctor. Haill said 'No. It is not serious enough to go to a doctor. I think it will be all right.' And I said, 'Maybe you had better go any way.' He answered, 'No, I think it will be all right.' I said, 'Well, if you want to go you can go. You are the judge. I think you ought to go,' and he said, 'No,' and I said, 'Watch it every day, and if it gets any worse go to a doctor.' I saw him every day and would ask him about his hand, and he said it was all right. I did not examine his hand until about four or five days after the accident when he showed me his hand. The wound had healed and close up. It was all right. One day after the accident—not the first day—I saw him, he had the bandage on, and said it wasn't a whole lot better, and I told him he had better go to a doctor. I told him I would send him to a doctor. I did not mention any doctor's name. I always gave letters to the doctor. I did not give him a letter because he refused to go. He said 'No.' The first day I told him if it got any worse he had better go to a doctor. I was his immediate superior, and he usually obeyed orders."

It is obvious that it may not be said as a matter of law under this record that Haill unreasonably refused to submit to medical treatment. In fact it does not conclusively appear that he refused at all.

It is true that defendants' witness Lateok testified that Haill refused to go to a doctor, though he repeatedly told him to go, and insisted that he do so, but this is countered by his further testimony to the effect that he merely suggested that he go to a doctor or advised that he ought to do so.

Defendants' witness Held also stated that Haill refused to go to a doctor, but his testimony as to what was said shows nothing more than that he suggested to Haill that maybe he had better go to a doctor, and that Haill did not go because he thought the wound was not serious enough to require medical attention, and that thereupon the witness told him to watch it and if it got any worse he had better go to a doctor. And the evidence shows that Haill did just this. The statement of the witness that Haill refused to go to a doctor is evidently merely the witness' erroneous conclusion from what was said.

It is pertinent to observe in this connection that a mere negligent failure on the part of the employee to obtain or accept medical treatment, though advised or urged to do so, does not bar a recovery of compensation under the statute. But to bar a recovery an unreasonable refusal to submit to medical treatment must be shown.

It is well to be reminded here of the rule, now well established in this State, that where the award of the commission is supported by any substantial competent evidence, it is conclusive and binding on appeal. In the recent case of Perry v. J. A. Kreis & Sons, 49 S. W. (2d) 220, this court, speaking through Judge BECKER, tersely stated the rule as follows:

"In passing upon the question whether the finding by the commission that the claimant was totally disabled from March 4, 1930, to January 14, 1931, is supported by sufficient competent evidence, we have in mind that findings of fact and awards of the commission have the force and effect of the verdict of a jury. [Jones v. Coal Co. (Mo. App.), 46 S. W. (2d) 196; Rolens v. Constr. Co. (Mo. App.), 24 S. W. (2d) 1077; Kinder v. Car Wheel & Foundry Co. (Mo. App.), 18 S. W. (2d) 91; Leilich v. Motor Co. (Mo. Sup.), 40 S. W. (2d) 601.] And that we consider only the evidence most favorable in support of such award, together with all reasonable inferences which may be drawn therefrom to support the conclusion of the commission, and will disregard any unfavorable testimony where it is contradicted by the evidence supporting the conclusion of the commission. [Leilich v. Motor Co., supra; Jones v. Coal Co., supra; Schulte v. Tea & Coffee Co. (Mo. App.), 43 S. W. (2d) 832.]"

So, too, it is well to be reminded here that the alleged unreasonable refusal of the employee to submit to medical treatment was an affirmative defense, the burden of proving which was on the defendants. There can be no question that the plaintiffs made out a prima facie case for compensation by showing that the death of the employee resulted from an accident arising out of and in the course of his employment. The burden was then on the defendants to prove their affirmative defense. The evidence to prove this defense was peculiarly, if not exclusively, within the knowledge and power of the defendants. The witnesses whose testimony the defendants rely on to support this defense were the employer's first-aid man and its superintendent. The only person who could have contradicted the testimony of these witnesses was dead. Under such circumstances the weight and credibility of their testimony, though uncontradicted, was for the commission. [State ex rel. Pabst Brewing Co. v. Ellison (Mo.), 226 S. W. 577; Gannon v. Laclede Gas Light Co., 145 Mo. 502, 46 S. W. 968; Seehorn v. American National Bank, 148 Mo. 256, 49 S. W. 886; Printz v. Miller, 233 Mo. 47, 135 S. W. 19; Johnson v. Grayson, 230

Mo. 380, 130 S. W. 673; Hunter v. Wethington, 205 Mo. 284, 103 S. W. 543; State ex rel. Boeving v. Cox, 310 Mo. 367, 276 S. W. 869.]

The commissioner recommends that the judgment of the circuit court, affirming the award of the commission, be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court, affirming the award of the commission, is accordingly affirmed. *Becker* and *McCullen, JJ.*, concur; *Hostetter, P. J.*, not sitting.