Eunice GEGG (Claimant), Respondent,

v.

ST. LOUIS INDEPENDENT PACKING COMPANY, a Corporation, Employer, and Security Mutual Casualty Company, a Corporation, Insurer, Appellants.

No. 28970.

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1954.

Rehearing Denied Oct. 15, 1954.

Alexander & Robertson, St. Louis, for appellants.

Goldenhersh & Goldenhersh, by Samuel J. Goldenhersh, and John D. Gallagher, St. Louis, for respondent.

WOLFE, Commissioner.

This is an appeal from a judgment of the circuit court approving the final award of compensation by the Industrial Commission. The claimant was awarded $414.85 for medical expenses and compensation for permanent partial disability for 60 weeks at $25 per week, making the total amount of the award $1,914.85. The employer and its insurer prosecute this appeal.

Eunice Gegg was employed by the St. Louis Independent Packing Company where she wrapped and packaged beef and veal steaks. These were brought to the table where she worked by a conveyor belt and after a certain amount of them had been placed in a box claimant was obliged to take the box to another room to weigh it. She was working a late shift and at 8:00 p. m. on December 15, 1950, she had gone with a fellow employee named Nedra Thompson into the room where the scales were located. The floor in that room was wet. Her feet slipped from under her and she fell, landing on her buttock. She and Mrs. Thompson laughed at her mishap, and after Mrs. Thompson helped her to her

feet they both returned to the other room. According to the plaintiff she told the foreman about her fall.

Claimant's lower back hurt and she felt shaken, but she continued to work until 11:00 p. m., which was the time that her workday ended. It was also the end of her work week and she rested over Saturday and Sunday but her back continued to hurt and she took aspirin to relieve the pain. She went to work the following Monday and continued until Friday, December 22, during which time her back continued to hurt. On December 25 she tried to get in touch with her doctor but was unable to reach him. On December 26 she saw her doctor and he referred her to a Dr. O'Dell. Dr. O'Dell had X rays taken and on December 27 he operated upon her back and she remained in the hospital until January 7, 1951.

For some years prior to her fall claimant had on occasions suffered from backaches which would sometimes last about a week and then go away. Since the operation she cannot stoop to a squatting position and cannot remain long on her feet because of pain in her back. She also has difficulty in raising her hands above her head. She wears a corset except when sleeping and has a numb tingling sensation in her hip.

Dr. O'Dell, who engaged in the practice of orthopedic surgery and had been teaching surgery at Washington University, testified on behalf of the claimant. He said that Eunice Gegg had been referred to him on December 26, 1950. At that time she was suffering from severe pain. She was on a table where she had been examined by other physicians when Dr. O'Dell first saw her and she had extreme difficulty in getting down from the table. She could bend forward, backward, and to the left and right, but a very few degrees and he ordered her hospitalized at once. X rays were taken and on the following day he operated upon her. She was suffering from a defect in the neural arch diagnosed by Dr. O'Dell as spondyloschisis. This he defined as a defect in the articulate portion of the vertebrae. The operation consisted of fusing the 4th and 5th lumbar and the 1st sacral vertebrae by chiseling off parts of the vertebrae and the right ilium and using the chips, which were packed on the denuded portion of the vertebrae, so that the three vertebrae fused together.

The patient was placed in a cast and after the cast was removed she was required to wear a corset. The results of the operation appeared by X ray to have been good. Dr. O'Dell said that some permanent disability would result from the fusion of the vertebrae and that the claimant could have some injury of a permanent nature to the muscles about the ilium. He fixed the disability to her spine at 25 per cent. He also said that spondyloschisis is usually congenital but it may be due to trauma; that when it is the result of trauma the disability is immediate. The condition that he found could have accounted for the low back pains that claimant said she had some 8 or 10 years before her fall.

Dr. O'Dell could not say that claimant's condition was congenital. He said that the attack from which claimant was suffering when he saw her on December 26 was initiated by the fall that she had on December 15. He stated that it would be possible for a person to go through life with spondyloschisis without suffering any disablement from it.

Dr. McCarroll, testifying on behalf of the employer, stated that in his opinion the defect in claimant's spine existed prior to her fall. He said, however, that it was possible that an acute attack of pain could be brought about by a fall where spondyloschisis is present.

From the foregoing evidence the referee found that the employee had suffered an accidental injury to her back arising out of and in the course of her employment, and that there had been a 15 per cent permanent partial disability to the body as a whole. Upon appeal to the full Commission a like finding was made, and, as stated, this finding was approved on appeal by the circuit court.

There is but one point raised on this appeal. It is contended that the claimant failed to prove any causal connection between her fall and the disability that she now has.

This court held in Harder v. Thrift Construction Co., Mo.App., 53 S.W.2d 34, loc. cit. 37:

"Generally speaking, the rule is that the act contemplates latent or dormant ailments; that the existence of a disease which does not impair the employee's ability to work will not prevent a recovery if the accidental injury accelerates or aggravates such disease to a degree of disability or of death; and that an actual aggravation of an existing infirmity caused by accident arising out of and in the course of the employment is compensable, even though the particular accident would have produced no such result in the case of a normal and healthy individual."

In DeLille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834, our Supreme Court quoted and approved the above portion of our opinion in the Harder case, and again in Wills v. Berberich's Delivery Co., 339 Mo. 856, 98 S.W.2d 569, the same statement was held to set forth the established rule. Cheek v. Durasteel Co., Mo.App., 209 S.W.2d 548; Christ v. St. Louis Malleable Casting Co., Mo.App., 213 S.W.2d 636, 641.

The point is thus resolved to the question of whether or not there was proof that a pre-existing ailment which did not disable claimant was aggravated by her fall to such a degree that she was thereafter disabled because of it.

In passing upon the sufficiency of the proof, "Our duty is to decide upon the whole record whether the Commission could reasonably have made its award; and to set aside the Commission's findings and award if clearly contrary to the overwhelming weight of the evidence." Christ v. St. Louis Malleable Casting Co., supra;

Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55.

It is maintained that the testimony of Dr. O'Dell was not sufficient to establish a causal connection between the aggravated condition of spondyloschisis and the fall. The doctor stated: "I think the injury that Mrs. Gegg sustained partially—how much I can't positively say, I don't see how anybody can, but I think it initiated the attack she had when I saw her." The injury he was referring to was the fall. Again he stated: "I think that the fall contributed to the patient's disability when she was first seen by me." Later, on cross-examination, the doctor was asked: "Doctor, as I understand it, by virtue of your answer to the hypothetical question submitted to you by Mr. Goldenhersh, when you assume this fall or assume those facts concerning this fall, your answer was it contributed to the patient's disability; by that you mean, Doctor, that it may have contributed to a pre-existing condition is that correct? A. I mean that it could, yes." The fact that the doctor in his answer used the word "could" does not, as the appellant urges, wipe out the effect of his previously stated opinion that the fall did initiate and contribute to the claimant's condition, for the two statements are not repugnant. Nor did the appellant's attorney so consider them, for he later asked: "So that when you use the word 'contributed' that only added to, or as you indicated, initiated her present disability, is that correct? A. Yes, sir."

In view of this the doctor was not stating mere probabilities but was giving his expert opinion which the Commission could, of course, consider in reaching its conclusions. In addition to this the claimant's own testimony was before the Commission and was properly considered in reaching a finding and award. Christ v. St. Louis Malleable Casting Co., supra. It therefore appears that the evidence was sufficient to establish a causal connection between the plaintiff's fall and the subse-

quent disability and that the award is not contrary to the weight of the evidence.

For the reasons stated, it is the recommendation of the Commissioner that the judgment of the circuit court affirming the award of the Commission be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court affirming the award of the Industrial Commission is accordingly affirmed.

RUDDY and BENNICK, JJ., and HOLMAN, Special Judge, concur.