Lee Roy GARRISON, Plaintiff-Respondent,

v.

CAMPBELL "66" EXPRESS, Inc., Defendant-Appellant.

No. 7584.

Springfield Court of Appeals.

Missouri.

Dec. 11, 1956.

Stanley P. Clay, Joplin, for defendant-appellant.

**24**

Sylvan Bruner, Morris Matuska, Pittsburg, Kan., Watson, Richart & Titus, Joplin, for plaintiff-respondent.

STONE, Judge.

■ In this proceeding under the Missouri Workmen's Compensation Law, the referee in the first instance, and thereafter the Industrial Commission of Missouri on review, awarded to Lee Roy Garrison, the claimant, for permanent total disability $35 per week for 300 weeks and thereafter $18 per week for the remainder of his life, subject to a credit of $610 for compensation previously paid by Campbell "66" Express, Inc., the employer and self-insurer. Following affirmance by the circuit court, the employer again appeals. Our appellate jurisdiction rests on the theory that, since a contingency exists under which the employer's liability might be terminated before payments aggregating more than $7,500 accrue [Section 287.230(2), RSMo 1949, V.A.M.S.], it cannot be said with certainty that the amount in dispute, independent of all contingencies, exceeds that sum. Crow v. Missouri Implement Tractor Company, Mo., 292 S.W.2d 573; Hogue v. Wurdack, Mo., 292 S.W.2d 576.

The accident, out of which this claim arises (hereinafter referred to as the 1954 accident), occurred on February 18, 1954, when one of the employer's delivery trucks, then being driven by claimant on a "narrow black-top" road in Newton County, Missouri, ran over an embankment and overturned, making "one complete turn" and coming to rest on its wheels. In claimant's words, "the steering wheel hit me in the chest, the top hit me in the head, and the seat hit me in the low part of my back." According to claimant, "I hurt in my chest and head and * * * low part of back" and "the longer I stayed there (at the scene of accident) the more addled I got." Taken by automobile to St. John's Hospital in Joplin, claimant was examined by Dr. W. W. Hurst, called by the employer, and x-rays, read as essentially negative, were made of the *dorsal* or *thoracic* spine. After a few hours in the hospital, claimant went home where, for "a week or two," he was in bed "most of the time" with intermittently severe pain in his chest, neck and lower back, and down the backs of both legs but "worse in the right leg." Claimant was given "intensive physiotherapy" at the office of Dr. Hurst; but, "when it was time for him to return to work he began to complain of pain in the low back," so x-rays were taken of the *lumbo-sacral* spine on March 24, 1954, which Dr. Hurst interpreted as reflecting "an ancient injury" but "no indication of recent fracture." After further physiotherapy, claimant was discharged on April 23, 1954, as *physically* able to return to light work; but, Dr. Hurst reported to the employer three days later that "he (claimant) is still not *emotionally* and *mentally* qualified to drive on the highways"—"he is able to do light work but on account of his congenitally deformed back, he will constitute an industrial hazard." "Dock work" was offered by the employer but claimant did not undertake it because, as he stated, "I wasn't able"—"hurt in my back so bad and my neck."

Claimant had no medical treatment or employment after his discharge by Dr. Hurst on April 23, 1954. At the hearing on February 7, 1955, claimant testified that he still had "sharp, severe pain" in his back, radiating down both legs but "the right one is worse," and similar pain in the back of his neck, radiating into his left arm, with a burning sensation between his shoulders. He could not lie on a pillow at night. Two or three times each week, his right leg "feels like it has needles in it," while at other times his legs and feet became numb. When driving his own half-ton pickup on two occasions (on dates not fixed in the record but after the 1954 accident), claimant "got a burning down my back" and a "hurting" into both buttocks, and "my right foot would get so I did not have no use of it, needles in it, like going to sleep, so I quit driving." Claimant has a sixth-grade education and through-

out his life has followed "grade work, truck-driving."

Although, at the time of hearing, the employer sharply disputed not only the cause but also the nature, extent, and duration of claimant's disability, there is no contention on appeal that claimant is not permanently and totally disabled but the employer's *sole* complaint here, i. e., that the referee, Industrial Commission and circuit court "erred in failing and refusing to invoke or apply the second injury fund" [Section 287.220(1), as amended Laws of 1953, p. 524],[1] goes to the *cause* of claimant's disability. In substance, the employer insists that "the disabilities from which he (claimant) now suffers" were caused by injuries sustained (1) in an accident near Jennings, Louisiana, on October 14, 1937 (hereinafter referred to as the 1937 Louisiana accident), when a tractor driven by claimant slipped into a 3-foot ditch which was being filled and, with "his left foot caught in the clutch lever," claimant was thrown out of his seat (but not off the tractor) and his body was "twisted," (2) in an accident near Bristow, Oklahoma, on December 8, 1937 (hereinafter referred to as the 1937 Oklahoma accident), when, as claimant stepped between a rear wheel and the gasoline tank to straighten up pipe being loaded onto a truck, the driver started the truck without warning, threw claimant to the ground, and ran over him, and (3) in a vehicular accident during 1940 (hereinafter referred to as the 1940 accident) when claimant's head was thrown against the rear glass of the cab of the pickup he was driving.

■ Having found it apparent that the purpose of Section 287.220(1) is to prevent duplication of compensation for disabilities, our appellate courts have declared that compensation for the last injury should be limited to the extent that it enhances or adds to *disability* already existing. But, it is equally clear and well-settled, as a necessary corollary, that the provisions of Section 287.220(1) may be invoked *only* in those cases where *disability* exists at the time of the last injury, and that this statute does not apply where a previously-injured employee has recovered completely prior to such last injury. Burgstrand v. Crowe Coal Co., 333 Mo. 43, 62 S.W.2d 406, 408–409(5–7); Komosa v. Monsanto Chemical Company, Mo.App., 287 S.W.2d 374, 377(5); Fuytinck v. Burton W. Duenke Building Company, Mo. App., 280 S.W.2d 449, 455–456. So whether, at the time of the 1954 accident, claimant had any pre-existing *disability* became the determinative issue in the instant case. On this issue, which was one of fact [cf. Special Indemnity Fund of State v. Dickinson, 208 Okl. 39, 253 P.2d 161, 162(1); Special Indemnity Fund of State v. Keel, 196 Okl. 315, 164 P.2d 996], the triers of the facts, i. e., the referee in the first instance and the Industrial Commission on review, found against the employer, the specific finding of the Commission being "that the employee did not have any previous dis-

---

1. All statutory references herein are to RSMo 1949, V.A.M.S.; and, all references to Section 287.220(1) are to that statute, as amended Laws of 1953, p. 524, the pertinent provisions of which read as follows: "All cases of permanent disability where there has been previous disability shall be compensated as herein provided. * * * If the previous disability, and the last injury together result in total and permanent disability, the employer at the time of the last injury shall be liable only for the last injury considered alone and of itself; provided, that if the compensation for which the employer at the time of the last injury is liable, as herein provided, is less than the compensation provided in this section for permanent total disability then in addition to the compensation for which such employer is liable and after the completion of payment of such compensation by such employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under section 287.200 out of a special fund known as the second injury fund * * *." For current statutory provisions pertaining to the second injury fund, see Section 287.220, as amended Laws of 1955, p. 590.

ability existing at the time of this accident on February 18, 1954."

For the purpose of this opinion, we assume (without, however, determining) the evidentiary competency of an authenticated transcript of the proceeding before the State Industrial Commission of Oklahoma (hereinafter referred to as the Oklahoma transcript), in which claimant sought additional compensation on account of the 1937 Oklahoma accident. From the medical testimony at a hearing on May 11, 1938, as included in the Oklahoma transcript, it appears that claimant had sustained a fractured ankle, a compression fracture of L-4, and a fracture of the transverse process of L-5 on the left side, but that the Oklahoma physicians were in sharp and irreconcilable disagreement with respect to not only the nature, extent and duration of claimant's disability but also the cause of the *back* condition. Dr. J. O. Lowe of Tulsa, claimant's attending physician selected by the then employer and insurer, said that claimant had not complained of pain in his *back* for more than two months after the 1937 Oklahoma accident, expressed the definite opinion that claimant's *back* condition was due to *the earlier 1937 Louisiana accident,* and thought that, when he last examined claimant on April 14, 1938, "he (claimant) was in pretty fair shape"—"he could move his back freely in all directions." Claimant was reported to have said that "he could return to work *as far as his back was concerned.*" On the other hand, Dr. J. E. Brogden of Tulsa, whose single examination of claimant was conducted on April 9, 1938, said that "the healing period" as to the back had not ended, advised hyperextension of the back for three to six months, and thought that, although "there is a possibility of him getting all right like he is, there is still greater possibility and probability that he may have a permanent disability." With respect to claimant's fractured ankle which, according to Dr. Lowe, was still swollen and had not attained its maximum degree of recovery, Dr. Lowe

was "rather inclined to think" that there would be some permanent partial disability which would "probably run about ten to fifteen per cent," while, in contrast, Dr. Brogden said that "I don't think there will be any disability of the ankle." Nothing in the record indicates what, if any, further medical treatment was given to claimant following the Oklahoma hearing on May 11, 1938, which, incidentally, was on claimant's application to change physicians.

Pursuant to "joint petition" of claimant and his then employer and insurer filed on September 12, 1938, in which it was recited, among other things, that claimant had "sustained an injury to his *right foot,*" the Oklahoma Commission entered an order on the same date approving payment of $2,162.04 under Section 13391, O.S.1931 [now 85 O.S.1951, Section 84], in compromise settlement "of any and all claims for disability that the claimant now has or may hereafter have" by reason of the 1937 Oklahoma accident. This order indicated (without so stating expressly) that the settlement contemplated some permanent partial disability, but there was no percentage estimate and no mention of claimant's *back* either in the joint petition or in the final order.

With respect to the 1937 *Louisiana* accident, there is nothing in the record other than references thereto in the *Oklahoma* transcript, from which it appears that claimant had sustained in Louisiana injuries of undisclosed nature and extent to his left leg and back, which were "treated for about five days" and resulted in his being "off work altogether about two weeks." As for the 1940 accident, we find not a scintilla of competent evidence and nothing more than the uncontradicted comment of his counsel that claimant "received only first aid attention * * *, suffered no disability, and lost no time from that injury."

At the hearing on February 7, 1955, claimant conceded that, following the 1937 Oklahoma accident, he had been off work

about eighteen months before returning to "light work." However, his further testimony, *wholly undisputed in the record,* was that he had returned to his "usual type of heavy work" in 1940, when his first steady employment was driving a "Euclid truck," which "hauls ten yards at a load," at Camp Crowder for four or five months; and, that thereafter he operated "a road patrol" with a "grader on it" at Fort Leonard Wood for three or four months, handled crates weighing as much as 300 to 400 pounds in the course of his employment by Joplin Transfer for about two years as the driver of "a winch truck," was "an extra" in the employment of Powell Bros. Truck Lines from March, 1944, to March, 1945, first worked for Campbell "66" Express (the employer in the instant case) during 1946 when he drove a tractor-trailer unit and handled "light and heavy" freight, was employed (for an undisclosed length of time) by Joplin Cement in driving "a Ford mixer truck" and "unloading cars of brick and sand," worked for Santa Fe Transportation Company for about one year, and, after his return to Campbell "66" Express about 1947, drove regularly for that employer until the 1954 accident, first on "a steel truck" hauling all kinds of freight and, during the last one and one-half years, on "city delivery" from Joplin to Neosho and Seneca, Missouri, which involved the loading and unloading of freight without any assistance. He had "a little .(medical) examination at Crowder," another "little examination about like on any job" at Fort Leonard Wood, and an examination "by a doctor at Campbell's just before I (claimant) had the accident." Our *only* information pertaining to either claimant's employment or his medical examinations during the period from 1940 to the 1954 accident comes from the testimony of claimant who, with respect to such employment, insisted that he experienced no pain or discomfort and had no medical attention and, with respect to such medical examinations, stated that he was not told that there was "anything wrong" with his back following the examination at Camp Crowder and that the examiner for the instant employer "didn't say anything about my back, never examined my back."

Four physicians, who treated or examined claimant after the 1954 accident, testified in this case. Dr. Hurst of Joplin, who, pursuant to designation by the employer, had treated claimant from the date of the 1954 accident to April 23, 1954, and Dr. Virgil E. Jeans of Joplin, who had examined claimant on January 25, 1955, testified for the employer at the hearing on February 7 and 8, 1955; and, Dr. B. E. DeTar of Joplin, who had examined claimant on December 14, 1954, testified for claimant at the same hearing. After detailing his findings on physical and x-ray examination of claimant, Dr. DeTar thought that "there was enough evidence of trauma within the last year to cause (claimant's) objective and subjective symptoms" and expressed the opinion that claimant was totally and permanently disabled as a result of the 1954 accident. The testimony of Dr. Hurst and Dr. Jeans may be epitomized as being, in substance, that they found no evidence of injury to claimant's back as a result of the 1954 accident, that whatever temporary total disability might have followed that accident had terminated prior to the hearing in February, 1955, and that such disability, if any, as still persisted at the time of hearing was not due to the 1954 accident.

At the conclusion of the hearing, the employer's counsel made "the suggestion that *due to the conflict of the testimony,* we are perfectly willing for the Commission to pick a neutral, independent specialist in Kansas City or Joplin to make an examination of this claimant and report to the Commission," whereupon the referee designated Dr. Harold V. Zuber of Kansas City as "a special neutral examiner" and opposing counsel stipulated that his written report be received in evidence. Following examination of claimant on March 18, 1955, and review of all x-rays theretofore taken by Drs. Hurst, DeTar and

Jeans, Dr. Zuber submitted a detailed written report, in which he recited, among other things, that claimant had said that "he had trouble for two or three years from (the 1937 Oklahoma accident) but then made a complete recovery," found "marked evidences of trauma and the sequela of trauma in his lumbar and in his cervical spine," and concluded that "he (claimant) presents a condition of permanent total disability." The deposition of Dr. Zuber, 131 pages in length, subsequently taken by the employer and embodied in the record before us, paints in vivid but ugly detail a blatant, strident and disagreeable word picture, in which, obtruded before us, we see a "neutral examiner" who, obviously nettled and exasperated by the tedious and searching examination conducted by the employer's painstaking counsel, and patently needled and encouraged by the gratuitous and cunning barbs and interjections of claimant's aggressive Kansas counsel, finally casts aside his thinly-veiled cloak of neutrality, self-righteously admonishes the employer's counsel that "this can be simplified if you will just go along with me," piously volunteers that "if you are interested in the facts in this case, I think this man is permanently and totally disabled," and gives vent to his irritation and feeling with such comments as "if you are sincere in trying to save some time, it's fully covered in my report" and "do I have to answer it again and again and again and again because you simply ask the questions?" But, although witness Zuber,

who in the same vein filed a claim for $400 for the taking of his deposition, apparently was more impressed with his self-fancied sacrosanct status as a "neutral examiner" than are we, ·nevertheless we should not and do not ignore his positive opinion that "he (claimant) was permanently and totally disabled as a result of his accident in 1954."

■■■ True it is that, upon the unwarranted assurances of claimant's Kansas counsel misinformed as to the applicable Missouri law, the quoted medical opinion of Dr. Zuber admittedly was predicated, in part, upon the "history" given by claimant. It has long been settled, beyond room for doubt or argument, that in stating his expert opinion as to a patient's condition a physician may testify as to what he observed personally and also as to what the patient said concerning his present, existing symptoms and complaints, but that the physician may not base his opinion upon, or testify to, statements of the patient with respect to past physical conditions, circumstances surrounding the injury, or the manner in which the accident was received.[2] However, no error for admission of the opinion evidence of Dr. Zuber is, or could have been, urged upon this appeal, because the employer's counsel interposed no objection or motion to strike.[3] This, no doubt, for the reason that the "history" given to Dr. Zuber consisted of facts which in themselves ·were competent evidence and were already in the record.[4]

2. Holmes v. Terminal R. Ass'n of St. Louis, 363 Mo. 1178, 257 S.W.2d 922, 926(5); Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W.2d 825, 831–832(4, 5); Magill v. Boatmen's Bank, 288 Mo. 489, 232 S.W. 448, 450(3); Holloway v. Kansas City, 184 Mo. 19, 82 S.W. 89, 94(2); Gladney v. Mutual Life Ins. Co. of New York, Mo. App., 186 S.W.2d 538, 543–544(3, 5). Contrast Feldotto v. St. Louis Public Service Company, Mo.App., 285 S.W.2d 30, 34(8); Murphy v. S. S. Kresge Co., Mo.App., 239 S.W.2d 573, 581; Phares v. Century Electric Co., Mo.App., 131 S.W.2d 879, 884.

3. Howell v. Kroger Grocery & Baking Co., Mo.App., 178 S.W.2d 101, 105(12). Compare Evans v. Missouri Pac. R. Co., 342 Mo. 420, 116 S.W.2d 8, 11(7).

4. Consult Huffman v. Terminal Railroad Ass'n of St. Louis, Mo., 281 S.W.2d 863, 871(11); Oesterle v. Kroger Grocery & Baking Co., 346 Mo. 321, 141 S.W.2d 780, 782(7); Baumhoer v. McLaughlin, Mo.App., 205 S.W.2d 274, 280(4). But, see Gladney v. Mutual Life Ins. Co. of New York, supra, 186 S.W.2d loc. cit. 544–545(8).

■■ From all of the medical evidence in the case, we are convinced that claimant had a congenitally weak back and that the hypertrophic arthritis in his lumbar spine, evidenced by "marked spurring" with definite sclerosis of the adjacent vertebral plates, had its origin long prior to the 1954 accident—in fact, probably prior to the 1937 Oklahoma accident, for we note in the Oklahoma transcript that x-rays of claimant's lumbar spine taken on April 9, 1938, revealed "considerable osteoarthritis" in this area. But, the fact that, at the time of the 1954 accident, claimant's back was not normal but was in a state rendering it easily susceptible to *injury or aggravation did not foreclose or affect his right to benefits for disability actually resulting from the 1954 accident.* For, in enactment of our Missouri Workmen's Compensation Law to afford protection to the weak as well as to the strong, the Legislature neither prescribed any standard of physical fitness to which an employee must conform nor predicated the right to benefits on any implied warranty of freedom from latent, dormant or quiescent disease or from congenital defect or weakness. Thus, " 'an actual aggravation of an existing infirmity caused by accident arising out of and in the course of the employment is compensable, even though the particular accident would have produced no such result in the case of a nor-

mal and healthy individual.' " [5] So, of particular significance is the explanation of Dr. Zuber that, prior to the 1954 accident, claimant "compensated for the bony changes with his soft-tissue supporting structures which were damaged by the injury in 1954 to the extent that they no longer could function in that capacity, and for that reason his disability is attributed to his injury in 1954."

■ In resolving the determinative issue as to whether or not, at the time of the 1954 accident, claimant had any preexisting disability, the Industrial Commission had the right to consider not only the expert opinions of the medical witnesses [Gegg v. St. Louis Independent Packing Company, Mo.App., 271 S.W.2d 223, 225 (3)], but also claimant's undisputed testimony to the effect that, throughout the period from 1940 to the date of the 1954 accident, he had worked at heavy labor without pain, discomfort or medical attention while, from and after the 1954 accident, he had been unable to work on account of the conditions detailed in evidence.[6] Furthermore, claimant's insistence that he "made a complete recovery" from injuries sustained in the 1937 Oklahoma accident was not without probative value,[7] since that statement, if it might have been excluded as a conclusion, was received without objection.[8] And, *even if*

5. Wills v. Berberich's Delivery Co., 339 Mo. 856, 98 S.W.2d 569, 572; Gegg v. St. Louis Independent Packing Co., Mo.App., 271 S.W.2d 223, 225(1); Vogt v. Lambert Pharmacal Co., Mo.App., 218 S.W. 2d 788, 792(6); Cheek v. Durasteel Co., Mo.App., 209 S.W.2d 548, 555; Tralle v. Chevrolet Motor Co., 230 Mo.App. 535, 92 S.W.2d 966, 973(12); Harder v. Thrift Const. Co., Mo.App., 53 S.W.2d 34, 37.

6. Wills v. Berberich's Delivery Co., supra, 98 S.W.2d loc. cit. 572; Christ v. St. Louis Malleable Casting Co., Mo.App., 213 S.W.2d 636, 641. See also Bush v. Kansas City Public Service Co., 350 Mo. 876, 169 S.W.2d 331, 335(8).

7. Texas Employers Ins. Ass'n v. Griffis, Tex.Civ.App., 141 S.W.2d 687, 689-690(1, 2); Armour & Co. v. Tomlin, Tex.Civ.

App., 42 S.W.2d 634, 638(12), affirmed Tex.Com.App., 60 S.W.2d 204; Birmingham Electric Co. v. Wood, 222 Ala. 103, 130 So. 786, 787(3). Compare Looff v. Kansas City Rys. Co., Mo., 246 S.W. 578, 580(4); Dean v. Wabash R. Co., 229 Mo. 425, 129 S.W. 953, 960(10); Hensley v. Kansas City Rys. Co., Mo.App., 214 S.W. 287, 289(5); Patterson v. Springfield Traction Co., 178 Mo.App. 250, 163 S.W. 955, 958(7).

8. Consult Steeley v. Kurn, 348 Mo. 1142, 157 S.W.2d 212, 213(4); Doyle v. St. Louis Merchants' Bridge Terminal Ry. Co., 326 Mo. 425, 31 S.W.2d 1010, 1012 (4), certiorari denied 283 U.S. 820, 51 S.Ct. 345, 75 L.Ed. 1435; Roberts v. Schaper Stores Co., 318 Mo. 1190, 3 S. W.2d 241, 244(8); Burley v. State Social Security Commission, 236 Mo.App.

the order of the Oklahoma Commission on September 12, 1938, approving payment of $2,162.04 as a *compromise settlement,* which is "not too certain a guide [as to the extent of disability] in any case" [Fuytinck v. Burton W. Duenke Building Company, supra, 280 S.W.2d loc. cit. 457], might be construed as a finding of some undetermined degree of partial disability then believed to be permanent, certainly that order would not compel a finding in the instant case that claimant had any disability at the time of the 1954 accident.[9] The frailty of man and the fallibility of his conclusions are nowhere demonstrated more convincingly than by the welter of confusing and contradictory expressions of opinion by the expert witnesses in this case; and, a finding of permanent partial disability (*if* made by the Oklahoma Commission in 1938) would not have precluded claimant's complete recovery, for a beneficent Providence might have been kinder or skilled human agencies might have been more helpful than was anticipated then.[10]

 Although, on this judicial review, we are authorized to determine whether, upon the entire record, the Industrial Commission reasonably could have made the findings and award under consideration, this does not mean that we are to substitute our own judgment on the evidence for that of the Commission; but, on the contrary, we may set aside its findings and award only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award.[11] And, where resolution of the ultimate issue largely depends upon which of two conflicting medical theories should be accepted, such issue is peculiarly one for determination by the Industrial Commission.[12] Furthermore, the employer's contention, as raised by and pleaded in its amended answer, that claimant's disability was due to injuries sustained in prior accidents, was an affirmative defense, i. e., a defense resting on facts not necessary to support claimant's case,[13] as to which the burden of proof rested on the employer.[14]

930, 163 S.W.2d 95, 96(3, 4); Cox v. Frank L. Schaab Stove & Furniture Co., Mo.App., 83 S.W.2d 211, 216(4); Ridenhour v. Oklahoma Contracting Co., Mo. App., 45 S.W.2d 108, 112(4); Wood v. Consolidated School Dist. No. 13, Mo. App., 7 S.W.2d 1018, 1021(6).

9. Gordon v. Chevrolet-Shell Division of General Motors Corp., Mo.App., 269 S.W. 2d 163, 170–171(6). Compare Special Indemnity Fund v. Osborne, Okl., 272 P. 2d 392, 394(8).

10. See Larson's Workmen's Compensation Law, Vol. 2, Section 59.42, loc. cit. 67; Peitz v. Industrial Accident Board, 127 Mont. 316, 264 P.2d 709, 712–713(6); Spencer v. Industrial Commission, 87 Utah 336, 40 P.2d 188, 196.

11. Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5, 11–12(1); Spradling v. International Shoe Co., 364 Mo. 938, 270 S.W. 2d 28, 30(2); Thacker v. Massman Const. Co., Mo., 247 S.W.2d 623, 627(1, 2); Kelting v. Columbia Brewing Company, Mo.App., 294 S.W.2d 572, 574(1, 2); Daniels v. Kroeger, Mo.App., 294 S.W.2d 562, 565(1).

12. Vollmar v. Board of Jewish Education, Mo., 287 S.W.2d 868, 872(4); Brown v. Griesedieck Western Brewing Co., Mo. App., 250 S.W.2d 803, 809(2); Vogt v. Lambert Pharmacal Co., supra, 218 S.W.2d loc. cit. 792; Williams v. International Shoe Co., Mo.App., 213 S.W.2d 657, 662(6).

13. Northrup v. Mississippi Valley Ins. Co., 47 Mo. 435, 444(4); Kersey v. Garton, 77 Mo. 645, 647(3); Hudson v. Wabash W. Ry. Co., 101 Mo. 13, 30(4), 14 S.W. 15, 19; Scudder v. Atwood, 55 Mo.App. 512, 521; Guinotte v. Ridge, 46 Mo.App. 254, 261. Contrast Grauf v. City of Salem, Mo.App., 283 S.W.2d 14, 18.

14. Compare Cuchi v. George C. Prendergast & Sons, Mo.App., 72 S.W.2d 136, 137(3), 138; Haill v. Champion Shoe Machinery Co., 230 Mo.App. 631, 71 S.W.2d 146, 149(4); Garnant v. Shell Petroleum Corp., 228 Mo.App. 256, 65 S.W.2d 1052, 1056; Barlow v. Shawnee Inv. Co., 229 Mo.App. 51, 48 S.W.2d 35, 48(17); Lee v. Oreon E. & R. G. Scott Realty Co., Mo.App., 96 S.W.2d 652, 654(5).

With all of the foregoing in mind, we conclude without hesitancy or doubt that the judgment of the circuit court (affirming the award of the Commission) should be affirmed. It is so ordered.

McDOWELL, P. J., and RUARK, J., concur.