PEE WEE COAL CO. *v.* HENSLEY.

(*Knoxville,* September Term, 1953.)

Opinion filed March 3, 1954.

James L. Witt, Jr., of Knoxville, for plaintiff in error.

William J. Turnblazer, of Middlesboro, Ky., for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is a Workmen's Compensation Case. It arose out of injuries received by Fred Hensley, a coal miner, when a very heavy slab in the mine of his employer, Pee Wee Coal Company, fell upon his face and forehead. From the Court's judgment finding total and permanent disability by reason of the injuries received, and ordering accordingly, the Coal Company has appealed. The first of its two insistences is that Hensley had fully recovered by October 23, 1951 from these injuries received July 17 preceding. It stopped payments as of that date.

There is medical testimony, and it comes from a witness testifying at the instance of the Coal Company, that Hensley had a fracture of the forehead and suffered what one of those doctors called ''a mild cerebral concussion''. There is a wealth of evidence, including the testimony of one doctor offered by Hensley, that Hensley is totally and permanently disabled as a result of the injuries received. This insistence of the Coal Company must, therefore, be rejected.

Section 6875 of the Code Supplement provides that:— ''The injured employee must submit himself to the examination by the employer's physician at all reasonable times if requested to do so by the employer, * * *'' and to ''accept the medical service which the employer is required to furnish under the provisions of this chapter''. If he refuse, his right to compensation shall be suspended ''while he continues such refusal''. Upon the trial it was insisted by the Coal Company that it is relieved from the payment of further compensation because Hensley did refuse (1) its request for further examination and

(2) to accept the medical services which the Coal Company was required by the statute to furnish.

The Court found that, commencing in January, 1952 and continuing through March following, Hensley did refuse to submit to further medical examination. However, the Court rejected this defense of the Coal Company on a finding that "by that time the petitioner's mental condition was such that for practical purposes he was not fully capable of making a decision or (of) refusing or accepting such a proposition, and that the statute does not contemplate a refusal on the part of the injured employee as barring compensation due and payable under such circumstances".

In addition to the fact that the Coal Company seems to think that Hensley is malingering, its insistence is that the statute makes absolute, mental condition notwithstanding, the obligation of the employee to the employer to submit to the medical examination requested by, or medical services required of, the employer, and that the Court erred in holding that Hensley was relieved of that requirement of the statute by reason of his impaired condition.

 Hensley filed his petition for compensation on March 15, 1952. The Coal Company answered on May 27, 1952. In addition to the averment that Hensley had fully recovered from the injuries received on July 17, 1951, the defense, it being the only other defense, interposed by this answer of the Coal Company is that Hensley

"was released from further medical care by said physician as of February 19, 1952—that the petitioner thereafter continued to complain—the defendant—in order to put the petitioner's mind at rest did, and has ever since, *offered* to furnish the peti-

tioner whatever additional and further medical attention he, *the petitioner, deemed necessary or wished* —and has *offered* to send him to other doctors, all of which the petitioner has rejected and has refused to accept—and rather than accept did file this suit." (Emphasis supplied.)

The third paragraph of Section 6875 provides that the employee's right to compensation shall be suspended so long as he refuses to submit to a medical examination by employer's physician at all reasonable times if *requested* to do so by the employer. The suspension of payments under this provision of the statute is authorized only when the employer makes a request for further examination and the employee refuses that request.

The declining of an *offer* of such further medical attention as "the petitioner deemed necessary or wished" is not *the refusal of a request* for further medical examination. An offer is not a request. Therefore, this defense interposed by the answer did not authorize the suspension of the payments required by the statute if Hensley were otherwise entitled thereto. This requirement of the statute is contrary to common law. It "must, therefore be strictly construed, so as not to impose upon the plaintiff any further obligation than is expressly required". *Helfenberger* v. *Harriman Northeastern R. Co.,* 156 Tenn. 14, 18, 299 S. W. 793, 794.

Turning now to the further insistence of the Coal Company that it was justified in suspending payments required by the statute because Hensley, so it says, refused to accept the medical services which the Coal Company was required by the statute, Code 6875, to furnish, we find that no such defense was averred in the answer of the Coal Company. As aforesaid, the defense, other

than the alleged complete recovery of Hensley, interposed by the answer is that set forth in the above quotation from the answer.

■ Code Section 6875 provides that for "not exceeding six months after notice [of receipt] of injury" the employer shall furnish, and the employee shall accept, medical care made reasonably necessary by the accident, provided that the employer shall designate for this service three doctors in the community, if there be that many, and the employee may select one of the three. There is no evidence that the Coal Company complied with this requirement of the statute. Hence, under the authority of the Helfenberger case, supra, it had no authority to suspend payments on that ground, even had it been pled as a defense in the answer.

As a matter of fact, as we read this record, the Coal Company never furnished, or offered to furnish, (other than to pay for some eye glasses) any medical services prior to the date alleged in its answer, February 19, 1952, which was more than six months after the accident occurred, and more than six months after it had notice of that accident.

It is true that Hensley was taken to a clinic in another county, Knox, on the day he received this accident and there went through a series of examinations by the doctors in that clinic, and was last seen by some of them on February 19, 1952, and was also examined by physicians who were not connected, perhaps, with this clinic. It is also true, as we understand this record, that he was sent there, and these doctors furnished, either by charity or by the United Mine Workers Union. In so far as this record discloses all that the Coal Company has ever done is to pay the compensation required by the statute

from the date of the injury, July 17, 1951, to .and including October 23, 1951.

▓▓ In *Ledford* v. *Miller Brothers Co.,* 194 Tenn. 467, 469, 253 S. W. (2d) 552, 553 this Court held "that the pleadings must be sufficient to advise the employer of the nature of the claim so that he may be prepared to meet it". Of course the same principle would require the answer of the employer to be sufficient to advise the employee of the nature of his defense. In as much as the .answer filed by the Coal Company in this case on May 15, 1952 gave notice of no defense which authorized it to suspend the weekly payments to Hensley, except the defense that Hensley had fully recovered from his injuries, and in as much as the Trial Court, upon substantial evidence, has found that Hensley was totally and permanently incapacitated by the injury of July 17, 1951 the Trial Court was required to enter judgment against the Coal Company for the payments exacted by the compensation statute from the date of its last payment to Hensley (October 23, 1951) to the date of the commencement of the trial of this case. That date was May 6, 1953. This the Court did.

▓ In addition, the Court ordered the Coal Company to continue these weekly payments until the entire .amount required by the statute to be paid Hensley for permanent total disability $7,500 shall have been paid. The final question here is whether this part of the Court's judgment is error.

This question is, per se, suggested by the fact that Code Section 6875 provides that the employee must submit to examination by employer's physician "at .all reasonable times if requested to do so by the employer". It is also suggested by the fact that there was here a

"case of dispute as to the injury". In such a situation this code section provides that the Court may, at the instance of either party, appoint a neutral physician to examine the employee and report his findings to the Court. That might well occur during the trial of the case.

An incident occuring shortly after the commencement of this trial is relevant in finding the answer to the question just posed. During the attempted direct-examination of the employee petitioner, Hensley, his answer to questions propounded, as well as voluntary statements which he made during that trial, clearly indicated a mental illness, if he was not malingering. The attorney for the Coal Company commented as to that fact. Thereupon the Court said:—"Gentlemen, wouldn't the proper recourse be to select some competent psychiatrist or specialist in mental conditions to conduct an examination and report?" Counsel for the Coal Company replied that "we have some medical proof of course on both sides by deposition". He did not, however, respond to the suggestion of the Court with a request, as he had the legal right to do, that the Court appoint an appropriate M.D. to examine this man. Nor did he at any time during that trial request further medical examination of Hensley. Thus, the Trial Court committed no error in ordering the weekly payments continued.

The record in this case, for the reasons hereinbefore detailed, requires an affirmance of the judgment entered in the Court below without the necessity of deciding the difficult question of whether the payments due an injured employee under our Workmen's Compensation Act are suspended by the refusal of a mentally ill employee to submit himself at all reasonable times to examination

of the employer's physician, if requested to do so by the employer, as required by Section 6875 of the Code Supplement. It is possible that our General Assembly may interest itself in this question so as to answer it, or provide a solution for it, in cases arising thereafter.

Judgment will be affirmed and the cause remanded for such further proceedings, if any, as may be necessary. All costs will be adjudged against plaintiff-in-error, Coal Company, and the surety on its appeal bond.