No. 43,417

WILLIAM T. EVANS, JR., *Appellant,* v. COOK & GALLOWAY DRILLING COMPANY (Respondent) and FIDELITY AND CASUALTY COMPANY OF NEW YORK (Insurance Carrier), *Appellees.*

(381 P. 2d 841)

Opinion filed May 11, 1963.

*J. Eugene Balloun,* of Great Bend, argued the cause, and *H. Lee Turner,* of Great Bend, was with him on the briefs for the appellant.

*Harry E. Robbins, Jr.,* of Wichita, argued the cause, and *Dwight S. Wallace, William Porter, Dale Fair Jr., Lyndon Gamelson,* and *Donald C. Tinker, Jr.,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from a judgment of the district court terminating a temporary total disability award made by the Workmen's Compensation Commissioner, now Workmen's Compensation Director (see Laws 1961, Chapter 243, Section 7 [effective June 30, 1961], now G. S. 1961 Supp., 74-710). The primary facts are not in dispute as there is no conflicting evidence.

The claimant, William T. Evans, Jr., was employed by the respondent, employer (Cook & Galloway Drilling Company). The respondent's insurance carrier was the Fidelity and Casualty Company of New York.

On the night of November 5, 1959, claimant was working for respondent on an oil derrick about fifty-five feet above the derrick floor. While unlatching a joint of pipe a strong wind caught claimant, knocking him against the pipe rack and striking his back and hip.

Claimant did not return to work the following day but called a Dr. Evans who taped his back and sent him to the hospital at Great Bend to be X-rayed. Later Dr. Evans sent him to Dr. Thurlow in Hays who examined him on one occasion. Claimant then returned to Dr. Evans who saw him every three or four days for a time. On February 22, 1960, he was given an orthopedic examination and X-rayed by Dr. Jarrott of Hutchinson. He was examined again by Dr. Jarrott on June 8, 1960.

Claimant was examined by Dr. John F. Lance, another orthopedic surgeon, on July 1, 1960. This doctor gave him a complete orthopedic examination and took X-rays of the lumbar spine.

In a general way it can be said that Claimant's ailments were diagnosed as osteoarthritis, osteoporosis, degenerative disc disease, and a superimposed mechanical backache. The osteoarthritis and the degenerative disc disease were not related to the accident. However, the accident did cause the osteoporosis to flare up. Claimant was totally disabled by the osteoporosis but with proper medical treatment the disability might be reduced to fifteen per cent.

The Workmen's Compensation Examiner found that the claimant sustained personal injury by accident arising out of and in the course of his employment, resulting in temporary total disability; that he was in need of treatment; and that the respondent and its insurance carrier should provide treatment for him by a competent orthopedic surgeon.

On October 28, 1960, an award was made for temporary total disability with weekly compensation for a period not to exceed 415 weeks or until the further order of the Commissioner. No appeal was taken from the award.

On December 8, 1960, the respondent and the insurance carrier filed an application with the Workmen's Compensation Commissioner for a review and modification of the award, charging that the claimant was not co-operating in obtaining medical treatment.

On December 28, 1960, counsel for the respondent and the insurance carrrier wrote a letter to the Workmen's Compensation Com-

missioner requesting a dismissal of this application stating that claimant was now co-operating in receiving treatment. Following receipt of such letter this application was dismissed on January 11, 1961.

On May 8, 1961, the respondent and the insurance carrier again filed an application for review, modification and cancellation of the award based on grounds that claimant had refused medical treatment.

The evidence on the involved application for review, modification and cancellation was by depositions of doctors Nickell and Jarrott.

Dr. Jarrott testified that he received authority from the insurance carrier to treat the claimant by letter dated November 16, 1960; that he arranged an appointment with claimant for December 5, 1960, which appointment was not kept but another appointment was made and kept December 22, 1960; that he found no particular change in claimant's condition; that claimant advised him he was going to live in Oklahoma and he would like to be treated by Dr. U. E. Nickell of Davenport, Oklahoma. Dr. Jarrott also stated that he wrote Dr. Nickell on December 27, 1960, informing him of the nature of claimant's ailments and outlined recommended medical treatment.

In his deposition Dr. Nickell stated that the claimant called at his office in January 1961. We quote pertinent portions of Dr. Nickell's testimony:

"A. He just came in and told me he got hurt there in a drilling company, I think it was, as a I remember, and that they was treating him and that he wanted to come down here and wanted me to treat him; and I said, 'All right, you have your records transferred down here and I'll examine you and see if there is anything the matter with you,' but I said, 'I ain't going to treat you on nobody's say-so about it, just what they say.' And he give me two bottles of medicine there, said 'That's what they give me,' and said, 'I ain't going to take it. It ain't doing me no good.' I don't know what kind of medicine he had or why the pills were given to him. He didn't give me any history of how the injury was sustained. He said his back hurt, in the lumbar region. He said he would write these people, and they sent me these two letters here, and I have never seen him since.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"A. I haven't seen him since that time, except he come in here in the office one day, but not for that at all; just come in the front room here and told me he'd see me later.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"A. You know, that letter from that doctor about treating him didn't amount to anything. He didn't have no right to authorize me to treat him. I just told Bill to write to him and let him send me the x-rays. He didn't send the x-rays to me, but this attorney said that the insurance company would pay for it."

Further testimony of Dr. Jarrott reads:

". . . I wrote Dr. Nickell a letter, dated December 27, 1960. The next thing I have in my file, in point of time, is a letter from counsel for respondent and insurance carrier wanting to know the present status of the patient. I advised that I had not heard from Dr. Nickell. An appointment was then made for Evans to see me on May 1, 1961. He appeared for the examination, and he obviously was not improving. He stated he made several attempts to see Dr. Nickell but had not been seen. His general physical condition was deteriorating and obviously was not getting better. A copy of that report was then sent to Dr. Nickell and the patient was requested to go back to Dr. Nickell. This was by letter dated May 1, 1961. I have had no further contact with the claimant. . . ."

". . . As far as the osteoarthritis and degenerative disc disease are concerned they are not related to the accident in any sense of the word. With treatment claimant's disability might reduce to 15 percent; it might reduce to 5 percent, resulting from the accident. With treatment for his osteoporosis his disability is going to range from 5 to 15 or 20 percent. If claimant does not get treatment for his osteoporosis his disability will remain total."

Further proceedings before the Examiner should be noted.

Claimant made the following offer through his attorney, Mr. Turner:

"Let the record show at this point that claimant again is willing to accept any and all treatment as outlined by Dr. Jarrott, that if Dr. Nickell sets up a regular schedule or series of appointments, that the claimant will keep the same and will accept whatever course of treatment is outlined by Dr. Jarrott.

"That in this connection, claimant would further prefer said course of treatment be administered by an orthopedic surgeon."

Mr. Robbins, attorney for the insurer, then made the following statement:

". . . we will certainly resist any change of treating physicians unless it is Dr. Jarrott right here in Hutchinson."

Mr. Turner replied:

"In this connection, we would be willing, so long as you provide the mileage and per diem, to have the claimant treated by Dr. Jarrott of Hutchinson, Kansas."

At the close of the hearing the Examiner made findings as follows:

"It is Found that Dr. Nickell does not wish to provide the medical treat-

ment as suggested by Dr. Jarrott and that the fault in the claimant not getting the treatment from him lies as much with Dr. Nickell as it does with the claimant. It is therefore found that the existing award of October 28, 1960, should not be modified.

"It is further found that the respondent and insurance carrier should attempt to find a qualified physician within the vicinity of the claimant's present address to give him the type of medication and treatment as recommended by Dr. Jarrott."

An order was issued in accordance with the foregoing findings on April 30, 1962. The respondent and its insurance carrier then appealed to the district court.

The district court heard the appeal on September 10, 1962, and rendered judgment on November 8, 1962.

In the judgment the court found that with treatment for osteoporosis, claimant's disability would have been reduced to ten per cent, and

"That save for such ten percent disability, the disability that Claimant suffers is not in any way caused by his accident herein but, is the result of his refusal to submit to such reasonable and conservative medical treatment. That Claimant has in fact refused such medical treatment and that such refusal is unreasonable and is the result of a plan formulated by Claimant to remain on temporary total compensation."

The district court further found that the temporary total award should be terminated as of April 20, 1962; that claimant should be allowed ten per cent partial disability from such date; and that the respondent and insurance carrier take credit for any overpayments made as measured by payments that are owing under the awards. The mathematical calculations were made as indicated by the findings and judgment entered accordingly. Thereupon the claimant perfected the instant appeal.

Appellant first contends that the district court erred in finding that the claimant refused to submit to reasonable medical treatment "as the result of a plan formulated by appellant to remain on temporary total disability."

It should be noted that the issue is not whether there was an "unreasonable" refusal. If there was a refusal to submit to medical treatment, the refusal is clearly unreasonable under the facts disclosed by the record. Appellant so agrees adding "but we submit there was no refusal at all."

The admissions of appellant have narrowed the issues and render unnecessary a discussion of the authority of the Workmen's Compensation Director or the courts, on appeal, to modify or cancel

awards to a claimant, under the Workmen's Compensation Act, for refusal to submit to reasonable medical treatment. (Workmen's Compensation Law, "Manual of Procedure and Rules," Rule 51-9-5; *Strong v. Iron & Metal Co.,* 109 Kan. 117, 198 Pac. 182; *Gentry v. Williams Brothers,* 135 Kan. 408, 10 P. 2d 856; *McCullough v. Southwestern Bell Telephone Co.,* 155 Kan. 629, 127 P. 2d 467.)

The rule that a workmen's compensation award may be modified or cancelled, for refusal to submit to reasonable medical treatment, is a forfeiture provision. Where the issue is raised, the burden of proof is upon the employer. (*Wood v. Wagner Electric Corporation,* [Mo. App.], 192 S. W. 2d 579; *Cuchi v. George C. Prendergast &Sons,* [Mo. App.], 72 S. W. 2d 136.)

". . . the burden was on the appellants [employer and insurer] to adduce sufficient competent evidence, that is to say, evidence of probative value and quality, to authorize such limited forfeiture. (citing case.)" (*Wood v. Wagner Electric Corporation,* page 585, *supra.*)

Our attention is called to the limited responsibility of this court, in reviewing a workmen's compensation case. We adhere to the fundamental rules announced in the recent case of *Philips v. Skelly Oil Co.,* 189 Kan. 491, 370 P. 2d 65. The numerous citations of pertinent authorities are here omitted, but the rules are quoted as follows:

". . . (1) it is the function of the trial court and not that of the appellate court to pass upon the facts and this court has no jurisdiction over questions of fact on appeal under the Workmen's Compensation Act (citing cases); (2) the question of whether the disability of a workman is due to an accident arising out of and in the course of his employment is a question of fact and when it is determined by the district court will not be disturbed by this court where there is substantial evidence to sustain it (citing cases); (3) whether the judgment is supported by substantial competent evidence is a question of law as distinguished from a question of fact (citing cases); and (4) in reviewing the record to determine whether it contains substantial evidence to support the district court's judgment, this court is required to review all the evidence in the light most favorable to the party prevailing below, and if there is any evidence to support the judgment it must be affirmed even though the record discloses some evidence which might warrant the district court making a contrary decision (citing cases)." (pp. 492 and 493.)

However, strict observance of the foregoing rules presents no difficulty in the reversal of the judgment of the lower court in this case. The burden of proof being on appellees, we find no evidence of record to support a finding that the appellant refused to submit

to medical treatment, and of a certainty none that would support a finding that medical treatment was refused as the result of a plan to remain on temporary total compensation.

There cannot be a refusal until there is a definite request. With out again reviewing the evidence, it suffices to say that the appellant kept his definite medical appointments at all times. After appellant made contact with Dr. Nickell in Oklahoma, a definite appointment was never set up for him. Dr. Nickell questioned his authorization for a considerable time. He, at all times, showed a reluctance to treat the appellant on the diagnosis and suggested medication of Dr. Jarrott. He wanted to see the X-rays, stating: "', . . . you have your records transferred down here and I'll examine you and see if there is anything the matter with you,' but I said, 'I ain't going to treat you on nobody's say-so about it, just what they say.' . . ." Dr. Nickell was never furnished with X-rays.

The only conclusion that can logically be reached is that the respondent, the insurer, Dr. Nickell, and the claimant were negligent in arranging a definite time for treatment and an agreed course of treatment.

The trial judge was evidently of the opinion that the only obligation on the part of the appellees was to authorize treatment. The obligation goes further. Before an award, under the Workmen's Compensation Act, can be canceled for refusal to submit to medical treatment, there must be a definite arrangement for a course of treatment, which is definitely refused. In *Haill v. Champion Shoe Mach. Co.*, 230 Mo. App. 631, 71 S. W. 2d 146, the rule is stated thus:

"It is pertinent to observe in this connection that a mere negligent failure on the part of the employee to obtain or accept medical treatment, though advised or urged to do so, does not bar a recovery of compensation under the statute. But to bar a recovery an unreasonable refusal to submit to medical treatment must be shown." (p. 636.)

See, also, *White Oak Refining Co. v. Whitehead,* 149 Okla. 297, 298 Pac. 611; *Tom Slick Oil Co. v. Sullivan,* 167 Okla. 72, 26 P. 2d 926; *Pee Wee Coal Co. v. Hensley,* 196 Tenn. 498, 268 S. W. 2d 367; *O'Neill v. Industrial Acc. Com.,* 91 Cal. App. 121, 266 Pac. 866.

After a detailed examination of the evidence before the district court at the time of its rendition of the involved judgment, and after having given careful consideration to all arguments advanced by the respective parties regarding the force and effect to be

given such evidence, we are forced to conclude the record in this case discloses no competent substantial evidence to sustain a finding by the district court that the appellant refused medical treatment and that such refusal was the result of a plan formulated by him to remain on temporary total compensation.

The conclusion just announced requires that the judgment be reversed and the cause remanded with directions to proceed in accord with the views herein expressed. It also makes the consideration of other questions raised and discussed in the briefs unnecessary.

The judgment is reversed.