No. 44,870

JIM MORGAN, *Appellee,* v. SHOLOM DRILLING COMPANY and TRAV-
ELERS INSURANCE COMPANY, *Appellants.*

(427 P. 2d 448)

Opinion
filed May 13, 1967.

*Jerry M. Ward,* of Great Bend, argued the cause, and *Tudor W. Hampton*
and *Herb Rohleder,* both of Great Bend, were with him on the brief for the
appellants.

*J. Eugene Balloun,* of Great Bend, argued the cause, and *H. Lee Turner,*
*Max E. Eberhart* and *Jack G. Duncan,* all of Great Bend, were with him on
the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is an appeal in a workmen's compensation case
from the decision of the district court determining the injured
workman was temporarily totally disabled and entitled to compen-
sation benefits and further medical treatment.

The appeal arises from an order of the district court overruling
an award of the workmen's compensation director ordering the
workman to submit to back surgery within thirty days and upon
the workman's failure to submit to the operation an alternative
award for 10% permanent partial disability should be in effect.

The appellee, Jim Morgan, will be referred to as the workman.
The appellants, Sholom Drilling Company and Travelers Insurance
Company, will be referred to as the respondents.

The workman was injured while working as a "roughneck" in the oil fields. He has not been able to engage in any work since his injury on March 6, 1964. The work of a "roughneck" involves considerable pushing and lifting of weights of over a hundred pounds. The workman injured his back while rolling pipe up on a catwalk, at which time he felt a "knife or burning in his back," and was thereafter unable to walk without help. He was taken to a doctor. The doctor x-rayed and then taped him. After five or six days the workman attempted to return to work but suffered pain and had to quit. He returned to the doctor and was placed in a hospital in traction and received other treatments. Six days later he was referred to Dr. Coffey, orthopedist, in Salina, Kansas. After examination Dr. Coffey returned him to the hospital at Great Bend for physical therapy and traction. Hospitalization lasted two weeks. His condition did not improve and he was hospitalized by Dr. Coffey in Salina. In July, 1964, he received electrical treatments and traction. On release he was fitted with a back brace. Further treatment consisted of exercise and rest. The workman was examined by Dr. Holderman, orthopedist, in Hutchinson, Kansas, at the request of respondents. More recently he has been examined and treated by Dr. Brown, orthopedist in Great Bend. This treatment consisted of traction, ultrasonic treatments and a fitted back brace. The workman continues to have pain in his back and hip. His left heel is partially numb and he has some difficulty sleeping. On April 21, 1965, the workman testified he was getting along a little better but still had the pain and was unable to work. The three doctors recommended an operation on his back. The workman testified he was afraid of the operation and he did not want to undergo surgery at this time. He wanted to wait until the operation appeared to be absolutely necessary.

The three doctors agreed that the workman was 100% temporarily disabled and could not expect to improve in the future to more than 40% or 50% permanent partial disability without an operation. With a successful operation the workman would have a residual permanent partial disability of around 10%. The doctors testified that the percentage of successful operations such as the one the workman needed was from 85% to 90%. One doctor diagnosed the injury as requiring an operation for spinal fusion and said no herniated disc was indicated. The second doctor diagnosed the injury as requiring an operation for spinal fusion and probable disc excision. The third

doctor diagnosed the injury as requiring only a disc excision, in the latter case there was 85% to 90% chance for success, and the residual disability would be from five to six percent. He testified an operation to excise an intervertebral disc is an easier operation with less blood loss and less surgical exposure and results in a more rapid convalescence. However, this doctor said it was possible that a spinal fusion might have to be undertaken later.

All doctors agreed that the operation was considered major surgery requiring anesthesia and the attendant risks. The chance of death resulting from risks such as postoperative heart condition and anesthetic accident was considerably less than one percent. They agreed the workman was a good operative risk at this time. Other factors noted as contributing to the 10% to 15% of unsuccessful operations were pulmonary embolus, infection, allergy, pseudo-arthrosis and neurological deficit.

During negotiations between the respondents and the workman prior to the hearing before the director, counsel for respondents repeatedly advised the workman, through his counsel, that they would recommend to the insurance company the furnishing of the expense of surgery to correct the workman's back condition. In each instance counsel on behalf of the workman replied that the workman desired to continue conservative treatment and he was not ready for surgical intervention because of the danger to life and limb.

Upon the director's review of the award by the workmen's compensation examiner the director made the following order:

"IT IS THEREFORE ORDERED, DECREED AND ADJUDGED THAT the award entered herein by Examiner Frank C. Sabatini on December 20, 1965, is hereby generally affirmed but modified as follows: The claimant is awarded temporary total disability until April 1, 1966. If claimant submits himself to a back fusion operation as recommended by Dr. Reiff Brown prior to April 1, 1966, he shall continue to draw temporary total disability until such time as the surgeon who performs the operation releases claimant from further treatment and indicates he is able to return to work. At that time the question of the claimant's permanent partial disability shall be reconsidered by the examiner. In the event the claimant fails or refuses to undergo said surgery by April 1, 1966, the award of temporary total disability shall end as of that date and thereafter claimant shall be awarded permanent partial disability at the rate of 10% until the award is paid in full or until further order of the director."

On appeal to the district court a decree was entered awarding temporary total disability to the workman and overruling the award

of the director ordering the workman to submit to the operation.

The district court made findings which are generally as follows. The spinal fusion recommended by the doctors is successful in 85 to 90 percent of the instances it is performed. The workman has had a complete course of conservative treatment and is not materially improved. It is not reasonable to expect further conservative treatment to attain significant results. The workman has not abandoned hope and is afraid of an operation. He is 34 years old and physically is a good operative risk. While all three of the doctors make a judgment that the workman should submit to the offered operation, at least two of them do not believe this should be done until he reconciles himself to accept it. Prevailing medical authority recommends the workman accept the surgery. The operation involves danger to life from the administration of anesthesia and from the surgery. Significant pain will follow the surgery. The workman's refusal to submit to surgery is reasonable. The decision of the director was intended to be coercive and should be overruled. The workman is temporarily totally disabled.

Two questions are focal points in this appeal. First, is the order of the district court supported by substantial competent evidence? Second, is the workman's refusal to undergo surgery reasonable under the circumstances?

On appeal this court's function is to review the record to determine whether it contains substantial evidence to support the district court's judgment. This court is required to review all the evidence in the light most favorable to the party prevailing below. If there is any evidence to support the judgment it must be affirmed even though the record may contain evidence upon which the district court might have reached a different decision. (*Alexander v. Chrysler Motor Parts Corp.*, 167 Kan. 711, 207 P. 2d 1179; *Phillips v. Skelly Oil Co.*, 189 Kan. 491, 370 P. 2d 65.)

The respondents argue the director has authority to reduce compensation benefits to a workman who unreasonably refuses medical treatment tendered by his employer. They say the doctrine of avoidable consequences has been extended to workmen's compensation cases in order to rehabilitate an injured workman in the public interest. Respondents insist the evidence establishes the necessity of the operation, the risk to life is minimal and the probabilities of success are great. They say in fairness to them the law should require the workman to submit or have his benefits reduced.

The prime difficulty in accepting this argument arises from a definite finding by the trial court that the workman's refusal to submit to surgery was reasonable.

When we review the evidence summarized in this opinion we find adequate support for the trial court's decision. The operation would not effect a cure, if successful, for it would leave the workman with a 10 percent residual permanent partial disability. The chance of a successful operation was not more than 90 percent. The risks attendant to such an operation were major and even though the risk of death was less than one percent this factor cannot be overlooked as supporting the trial court's finding.

K. S. A. 44-518 provides for suspension of the right of an employee to benefits during the period of time that he refuses to submit himself for examination by a physician. There has been no refusal to submit to examination in the present case.

The following cases were cited by the respondents as authority for the director to reduce benefits when a workman unreasonably refuses medical treatment. *Strong v. Iron & Metal Co.*, 109 Kan. 177, 198 Pac. 182; *Gilbert v. Independent Construction Co.*, 121 Kan. 841, 250 Pac. 261; *Gentry v. Williams Brothers*, 135 Kan. 408, 10 P. 2d 856; *Alexander v. Chrysler Motor Parts Co.*, supra.

In the *Strong, Gilbert* and *Gentry* cases, a refusal to undergo hernia operation was involved. In *Strong* the district court found that the refusal to submit to surgery for the repair of a hernia was unreasonable. This court noted that the question of reasonableness was a question of fact, and when the trial court has determined this question of fact, and the conclusion is supported by evidence, it is binding.

In *Gilbert* the district court found that the refusal was reasonable, and this finding was upheld on appeal. The district court stated the workman's refusal to accept the operation tendered by respondents was not unreasonable on the part of the workman and that the workman should not be compelled to submit to an operation to secure compensation for the injuries received.

In *Gentry* (pp. 409, 410) this court observed:

". . . Many of the states that have adopted a workmen's compensation act similar to ours have a statutory provision regulating surgical operations. In other states we find no such express provision and there is none in our statute . . . If he is not subject to unusual risk and danger from the anesthetic to be employed, or from the nature of the proposed operation, it is

his duty to submit to it if it fairly and reasonably appears that such operation will effect a cure."

In 1949 this court delivered its decision in *Alexander* affirming the district court in holding that a refusal to undergo a myelographic examination with possible subsequent back operation for a herniated disc was not unreasonable. Following these decisions, the Kansas legislature amended K. S. A. 44-510 (22) to provide that the unreasonable refusal of a workman to submit to a surgical repair of a hernia may limit his benefits. (ch. 250, sec. 4, L. 1955.) Even under this statute it should be noted not every refusal to submit to hernia operation is considered "unreasonable," but a finding of unreasonableness must be made before there can be a limitation of benefits.

The case of *Evans v. Cook & Galloway Drilling Co.*, 191 Kan. 439, 381 P. 2d 341, does not involve treatment by surgery. In *Evans* we held the burden is on the employer and its insurer to establish refusal to submit to reasonable medical treatment when the issue is raised.

In *Gutierrez v. Harper Construction Co.*, 194 Kan. 287, 398 P. 2d 278, we considered the effect of the workmen's compensation director's rule 51-9-5. This rule states that *an unreasonable refusal* of the workman to submit to *surgical treatment,* where the danger to life would be small and the probabilities of a *permanent cure* great, ordinarily justifies refusal of compensation beyond the period of time the injured would have been disabled had he submitted to an operation.

In *Gutierrez* we said before a refusal can be unreasonable under the director's rule the probabilities of a permanent cure must be great.

The medical testimony of all three orthopedists in the present case established that in event the operation was successful the workman would still have a residual permanent partial disability of ten percent. Under the evidence no permanent cure was possible and the director's rule does not apply.

In view of the foregoing the judgment of the district court is supported by substantial competent evidence.

The judgment is affirmed.