(79 P.3d 230)
No. 90,326

BERNARDO MARTINEZ, *Appellee,* v. EXCEL CORPORATION, *Appellant.*

—

Opinion filed November 26, 2003.

*D. Shane Bangerter*, of Rebein & Bangerter, PA, of Dodge City, for appellant.

*Stanley R. Ausemus*, of Stanley R. Ausemus, Chartered, of Emporia, for appellee.

Before RULON, C.J., GREEN, J., and STEPHEN D. HILL, District Judge, assigned.

GREEN, J.: Excel Corporation appeals from an award by the Workers Compensation Board (Board) to Bernardo Martinez for work-related injuries. Excel argues that the Board erred in determining that Martinez' refusal to undergo carpal tunnel surgery was reasonable within the meaning of K.A.R. 51-9-5. The issue before this court is whether there was substantial competent evidence to support the Board's decision. Because expert testimony revealed that there were significant risks, as well as uncertainty about the ultimate result of the surgery, we find that there was substantial competent evidence to support the Board's decision. Accordingly, we affirm the Board's ruling.

Bernardo Martinez suffered injuries to his back, shoulders, arms, hands, and legs while working as a trimmer at Excel Corporation. Dr. J. Raymundo Villanueva treated these injuries with medication, physical therapy, and local injections. A nerve conduction velocity test revealed that Martinez had severe bilateral carpal tunnel syndrome and bilateral Guyon's syndrome. After Martinez' condition

failed to improve, Dr. Villanueva recommended carpal tunnel release surgery. Martinez declined the surgery.

Martinez requested a hearing with the Division of Workers Compensation to determine the amount of compensation for his injuries. After hearing testimony from Martinez and reviewing deposition testimony from several expert witnesses, the administrative law judge (ALJ) awarded compensation based on a 25.5% disability rating. The award represented an average of two impairment ratings—one rating was an estimate of Martinez' injuries if he would have undergone the carpal tunnel surgery, and the other rating was based upon his present condition without the surgery. The judge reasoned that Martinez could later request the surgery and possibly reduce his disability substantially and, therefore, should not receive compensation based upon the highest impairment rating.

Both Martinez and Excel appealed this decision to the Board. The Board increased the award based upon a 39.5% impairment rating. This award was an average of the impairment ratings of the two expert witnesses, Dr. Villanueva and Dr. Pedro Murati, for Martinez' present condition. These impairment ratings were determined according to the American Medical Association, Guides to the Evaluation of Permanent Impairment (AMA Guides), as required by K.S.A. 44-510e. The Board noted that, according to the AMA Guides, a patient's decision to not undergo surgery should neither increase nor decrease his or her impairment rating. The Board concluded that Martinez' "present functional impairment rating should be based upon his actual present physical condition rather than based upon speculation of what it might be in the event he underwent multiple surgeries and achieved successful results."

The Board also considered K.A.R. 51-9-5, which provides:

"An unreasonable refusal of the employee to submit to medical or surgical treatment, when the danger to life would be small and the probabilities of a permanent cure great, may result in denial or termination of compensation beyond the period of time that the injured worker would have been disabled had the worker submitted to medical or surgical treatment, but only after a hearing as to the reasonableness of such refusal."

The Board determined that it was reasonable for Martinez to decline the surgery and, therefore, refused to deny benefits under

this regulation. It looked to several significant factors, including the fact that there were several attendant risks, there was a question whether the surgery would result in a permanent cure, Martinez knew other people who suffered worse symptoms after this particular surgery, and Martinez' other treatments were unsuccessful.

Excel timely appealed to this court.

" 'Our scope of review in a workers compensation case requires that we view the evidence in a light most favorable to the prevailing party and that we determine whether the [Board's] findings are supported by substantial competent evidence.' [Citation omitted.]" *Bradford v. Boeing Military Airplanes*, 22 Kan. App. 2d 868, 870, 924 P.2d 1263, *rev. denied* 261 Kan. 1084 (1996). "The appellate court will affirm the Board's ruling absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. [Citation omitted.]" *Griffin v. Dale Willey Pontiac-Cadillac-GMC Truck, Inc.*, 268 Kan. 33, 34, 991 P.2d 406 (1999).

Excel asserts that the standard of review is de novo. When the evidence is undisputed, the question then becomes whether the Board correctly applied those facts to the law, which we review de novo. *Lawson v. City of Kansas City*, 22 Kan. App. 2d 507, 509, 918 P.2d 653 (1996). In this situation, however, the evidence is disputed because part of the testimony reveals that the surgery would probably produce a successful outcome while other testimony reveals that the surgery would not produce a permanent cure because only some of the symptoms may be relieved and the symptoms could return. As a result, the Board's determination of whether Martinez' decision was reasonable was a question of fact to which we apply the substantial competent evidence standard of review.

First, Excel argues that the Board erred in finding that Martinez' refusal to undergo surgery was reasonable within the meaning of that term in K.A.R. 51-9-5. In support of its argument, Excel points to three factors: (1) that the risks of surgery were small, (2) that the prospects of success were high, and (3) that Martinez presented no sound reason to refuse the surgery.

"The rule that a workmen's compensation award may be modified or cancelled, for refusal to submit to reasonable medical treatment, is a forfeiture provision. Where the issue is raised, the burden of proof is upon the employer. [Citations omitted.]" *Evans v. Cook & Galloway Drilling Co.*, 191 Kan. 439, 444, 381 P.2d 341 (1963).

The evidence in this case does not support Excel's contentions. It is important to note that the Board had before it expert testimony from three doctors who had experience with carpal tunnel patients and were knowledgeable about the results of carpal tunnel surgery. These doctors discussed the risks that were involved with this particular surgery, including the risk that some patients experience no relief and that a few patients experience worse symptoms. Although these experts testified that they expected the surgery to improve Martinez' injuries, they determined that the amount of improvement was uncertain. In fact, Dr. C. Reiff Brown testified that only about 50% of patients experience a return of their normal strength.

Apart from these risks, there were risks attendant to the surgery itself. Although the Board noted that these risks were small, it considered Dr. Brown's testimony which revealed that the surgeon could sever a blood vessel, the surgery could cause nerve damage in the arms and hands, and the patient could suffer a reaction to the anesthesia and an infection.

Martinez was aware of some of the risks and expressed concern that the surgery would not produce beneficial results. In particular, he testified that he knew people who had experienced worse symptoms after surgery than they had before the surgery. He was also concerned that his previous course of treatment was unsuccessful although he had been told otherwise by the doctor. When an operation is serious and the injured party is informed of the nature of the operation and is genuinely afraid, his or her refusal to undergo surgery will not defeat compensation. *Sultan & Chera Corp. v. Fallas*, 59 So. 2d 535, 537 (Fla. 1952). Because Martinez had witnessed negative results from this particular surgery and because his previous course of treatment had not been successful, it was reasonable that he would decline the surgery.

Excel also contends that the prospects of success were high because Dr. Villanueva testified that 80% of patients experience a good outcome from this surgery. K.A.R. 51-9-5, however, requires that there be a great probability of a *permanent* cure, not that the surgery produce some relief from the symptoms. Although Dr. Villanueva estimated that 80% of patients would have a good outcome from the surgery and would have a complete resolution of the problem, he could give no guarantee that Martinez would realize a permanent cure. In addition, Dr. Brown testified that only 75% of patients have experienced a good result from the surgery. Other testimony by the doctors indicated that the surgery would not produce a permanent cure because some of the patients would still experience carpal tunnel symptoms. In fact, Martinez' symptoms would probably recur if he worked at a job similar to the one which caused his injuries.

Moreover, 80% is not a great chance of success within the meaning of K.A.R. 51-9-5. In *Morgan v. Sholom Drilling Co.*, 199 Kan. 156, 160, 427 P.2d 448 (1967), the injured party refused to undergo back surgery when the chance of a successful surgery was not more than 90%, the surgery had major risks, and it would not effect a complete cure. In that case, the doctors were unable to agree on the extent of surgery required but all recommended that the injured party needed back surgery. Although there was a slight risk of death with this surgery, an expert doctor testified that this risk accompanied any major surgery with anesthesia. 199 Kan. at 157-58. Our Supreme Court upheld the trial court's judgment finding that the injured party's decision was reasonable. 199 Kan. at 161.

Here, Martinez' 80% chance of a successful surgery was even less than that of the injured party in *Morgan*. Although the doctors testified that they had never lost a patient during this particular surgery, they testified to other harmful risks including the possibility that carpal tunnel symptoms would recur. Additionally, Dr. Villanueva's impairment rating used by the ALJ estimated that Martinez would suffer some symptoms after the surgery. This evidence indicates that the chance of a permanent cure was not great within the meaning of K.A.R. 51-9-5. See also *Sarantis v. Sheraton Corp.*, 69 Or. App. 575, 581-82, 688 P.2d 99 (1984) (Decision to

not undergo surgery was reasonable when there was 75% chance of improvement and 25% chance of no improvement or worse result.).

Based on the evidence before the Board, we find that the Board correctly decided that the refusal to undergo surgery was reasonable. Specifically, the Board was presented with substantial competent evidence in the form of testimony by three expert doctors, as well as testimony by Martinez. The evidence revealed that this surgery involved significant risks, including the risk that Martinez would experience limited or no improvement. In addition, Martinez was justifiably concerned about undergoing a course of treatment that could possibly yield worse symptoms. Although there was testimony that the surgery had an 80% chance of a successful result, this percentage was not a great probability of a permanent cure under K.A.R. 51-9-5 after considering the risks. As a result, we find that there was substantial competent evidence to support the Board's determination that Martinez' decision to undergo surgery was reasonable. We affirm the Board's decision not to deny benefits, based on K.A.R. 51-9-5.

Finally, Excel alleges that statements in the AMA Guides that a patient's refusal to undergo surgery should not decrease the impairment rating are inapplicable to this case. He argues that the applicable law is K.A.R. 51-9-5 and not comments in the AMA Guides.

K.A.R. 51-9-5 and comments found in the AMA Guides apply to two different concepts. K.A.R. 51-9-5 applies to termination of compensation benefits, while comments in the AMA Guides refer to adjustment of the impairment rating. The Board correctly noted that K.S.A. 44-510e specifically requires the impairment rating to be based on the AMA Guides. As a result, it was not error for the Board to consider these comments and conclude that Martinez' impairment rating should not be based upon speculation about his results after a successful surgery.

Because the Board went on to find that Martinez' refusal of surgery was reasonable under K.A.R. 51-9-5 and because we have

affirmed that ruling, we find it unnecessary to address this argument any further.

Affirmed.