(196 P.3d 395)
No. 99,329

MARK NISTLER, *Appellant,* v. FOOTLOCKER RETAIL, INC., and AMERICAN CASUALTY CO. OF READING, PENNSYLVANIA, *Appellees.*

Opinion filed November 21, 2008.

*David P. Troup,* of Weary Davis, L.C., of Junction City, for appellant.

*Eric K. Kuhn* and *Stephen M. Kerwick,* of Foulston Siefkin LLP, of Wichita, for appellee.

Before HILL, P.J., KNUDSON, S.J., and LARSON, S.J.

KNUDSON, J.: Mark Nistler appeals the Workers Compensation Board's (Board) determination that he is not entitled to permanent partial disability benefits in excess of functional impairment. The issue presented on appeal is whether the Board erred in its determination that Nistler's post-injury wages are equal to or more than 90% of his average gross weekly wage earned at the time of the accident. We reverse the Board's decision and remand for a redetermination of Nistler's wage loss and permanent partial general disability benefits.

*The Underlying Circumstances*

The basic facts supporting the award are not in material dispute, including the fact Nistler is making substantially less than he did before his injury. The parties stipulated Nistler's injury, which occurred on November 9, 2004, arose out of and in the course of his employment with Footlocker Retail, Inc. (Footlocker), and coverage was afforded under the Workers Compensation Act (Act), K.S.A. 44-501 *et seq.*

Prior to the injury, Nistler was employed by Footlocker as a Material Handler II and received an hourly wage of $13.19 based on a 40-hour workweek. He was paid overtime at one and one-half times his hourly rate for work in excess of 40 hours a week. The parties stipulated Nistler's preinjury average weekly wage was $652.47. This stipulation means Nistler would have averaged more than 6 hours a week in overtime wages. Nistler testified that after his injury his fellow Material Handler II's continued to work generally 50 hours a week with an increase in base wages to $14.49 per hour. Unfortunately for Nistler, based on physical limitations imposed by his physician, he could not continue as a Material Handler II and was eventually given an accommodated position as a Material Handler I.

Footlocker's records reveal Nistler's actual wages were dramatically reduced after he was able to return to work. For the first 32 weeks, relegated to light duty, he averaged 32.55 hours per week and $444.17 in weekly wages. In late spring of 2005, Nistler was reclassified from Material Handler II to Material Handler I to ac-

commodate his permanent physical limitations that resulted from the injury. His reclassification resulted in less physical wear and tear but also moved him into a job with significantly fewer hours of work than would have been available as a Material Handler II. Parenthetically, there was no evidence Nistler's loss of hours and wages due to the reassignment from Material Handler II to Material Handler I was due to any business downturn or other intervening economic circumstances. In other words, Nistler's actual wage loss appears directly related to the accident and the resulting physical restrictions imposed by his doctor. We note the Board in its final order acknowledged the expert testimony that Nistler could no longer perform 17 of the 23 work tasks for a Material Handler II and that he retained the ability to earn at least $7 per hour.

From June 28, 2005, to June 17, 2006, Nistler's average weekly wages were $468 and he averaged 32.48 hours per week. From June 18, 2006, until February 10, 2007 (1 month after the regular hearing), he averaged 33.20 hours and $481.85 per week.

In summary, the wage records reveal that from the date of the injury until shortly after the regular hearing before the administrative law judge (ALJ), Nistler worked 116.4 weeks, with weekly averages of 32.71 work hours and $465.41 in wages. Again, this compares to his stipulated average weekly wage immediately before the injury of $652.47.

Jamie Hill, employee relations manager for Footlocker, testified that prior to the injury Nistler was occasionally required to work more than 40 hours per week. She also testified that after his injury, Nistler has, on occasion, been required to work more than 40 hours per week. However, on cross-examination, she admitted that for the 16 weeks ending April 8, 2006, all of Nistler's workweeks consisted of less than 40 hours of work; only in a 2-week pay period ending December 17, 2005, did Nistler's workweek average 40 hours a week. According to Hill, Footlocker considers an employee to be full time if the employee averages more than 32 to 34 hours per week. She also testified that Footlocker expects employees to work more than 40 hours per week if there is sufficient company need.

After considering the evidence presented, the ALJ awarded work disability, reasoning:

"The Respondent argues that the Claimant should be considered a full time employee, and that his wages should be calculated based upon the 40 hour work week the respondent is not willing to provide to the Claimant. Citing K.S.A. 44-511 and 44-510(e), the essence of the Respondent's argument is that as a pre-injury average weekly wage is usually based upon a 40 hour workweek where the employee is considered to be a full time employee, the post-injury wages should be calculated in the same manner.

"The testimony of the Claimant and Ms. Hill demonstrate the Claimant is still expected to work 40 hours a week if those hours are required.

"The Court finds that to accept the argument of the Respondent would defeat one of the primary purposes of the Workers Compensation Act. 'It can be very properly stated that the purpose of the [workers] compensation law is not to pay the workman for the injury, but to compensate him in a way for his loss of earning power.' *Blythe v. State Highway Comm.*, 148 Kan. 598, 601[, 83 P.2d 678] (1938)."

The ALJ determined Nistler had sustained a 17.6% wage loss and a 80.8% task loss, resulting in a 49.2% work disability and an award of $88,818.30.

The Board's approach was strikingly dissimilar from that of the ALJ. Applying K.S.A. 2005 Supp. 44-511(a)(4) and (5), the Board found that because Footlocker expected Nistler to be available to work 40 hours or more, he met the statutory definition of a full-time employee. In the alternative, the Board found Nistler was a full-time employee because the evidence showed he was employed in a trade or employment where employees are considered full-time by custom of such employment regardless of the hours worked per day or per week. The Board held that K.S.A. 2005 Supp. 44-511(b)(4) was applicable, *imputed* a 40-hour workweek, and determined claimant's post-injury average weekly wage was 90 percent or more of his preinjury average weekly wage. Consequently, the Board concluded Nistler was not entitled to work disability benefits and reduced his permanent partial disability award to $18,052.50.

*Issues on Appeal*

The fundamental issue before us is whether the Board erred in its determination of Nistler's post-injury average weekly wage. This

issue requires interpretation of K.S.A. 44-510e; K.S.A. 2005 Supp. 44-511(a)(4) and (5); and K.S.A. 2005 Supp. 44-511(b)(4). Nistler contends the Board incorrectly applied 44-511(b)(4) in determining his post-injury wage. Alternatively, Nistler contends there was insufficient evidence to support the Board's finding he was a full-time employee in the accommodated position he was given after the injury.

*Standard of Review*

Undisputed evidence

A critical issue is whether K.S.A. 2005 Supp. 44-511(b)(4) should be applied to determine Nistler's post-injury average weekly wage. The underlying facts from which the Board reached its determination are not disputed. Our standard of review as to this issue is de novo. See *Martinez v. Excel Corp.*, 32 Kan. App. 2d 139, 142, 79 P.3d 230 (2003).

Statutory Interpretation

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). "When a statute is plain and unambiguous, we must give effect to the legislature's intention as expressed, rather than determine what the law should or should not be. A statute should not be read to add that which is not contained in the language of the statute or to read out what, as a matter of ordinary language, is included in the statute." *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, Syl. ¶ 6, 154 P.3d 494 (2007).

When issues of interpretation do arise, however, the court is presented with a question of law over which it has unlimited review. *Pruter v. Larned State Hospital*, 271 Kan. 865, 868, 26 P.3d 666 (2001). Nonetheless, under the doctrine of operative construction, an administrative agency's legal interpretation of the statutes that agency is authorized to enforce is generally entitled to great judicial deference. *Denning v. KPERS*, 285 Kan. 1045, 1048, 180 P.3d 564 (2008). However, the Kansas Supreme Court has tempered the doctrine of operative construction if the issue of law is

based on undisputed facts. Under such a circumstance, the Supreme Court has held the agency's interpretation to be persuasive but not binding on the reviewing court. *Graham v. Dokter Trucking Group*, 284 Kan. 547, Syl. ¶ 2, 161 P.3d 695 (2007).

Sufficiency of Evidence

An appellate court's review of questions of fact in a workers compensation case is limited to whether, when reviewing the record as a whole, the Board's findings of fact are supported by substantial evidence, which is a question of law. *Casco*, 283 Kan. at 514.

*Discussion of Issue*

Before addressing the substantive issue that has been raised, we note Nistler's argument that the Board failed to liberally construe the Workers Compensation Act in determining his post-injury wage. We conclude his argument is based on an erroneous premise. The Act is to be "liberally construed for the purpose of bring employers and employees within the provisions of the act to provide the protections of the workers compensation act to both. *The provisions of the workers compensation act shall be applied impartially to both employers and employees in cases arising thereunder.*" (Emphasis added). K.S.A. 2005 Supp. 44-501(g). In this appeal, coverage under the Act has been afforded to Nistler and Footlocker. We know of no statute or canon that would require liberal interpretation of statutory provisions within the Act once coverage has attached. We conclude the Board did as the law provides, acting fairly and impartially toward both parties in interpreting the act and reaching its decision. The issue is whether the Board's findings and conclusions are supported by the record and specific provisions of the Act.

K.S.A. 44-510e(a) reads in relevant part:

"The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding the accident, averaged together with *the difference between the average weekly wage the worker was earning at the time of the injury and the average weekly wage the worker is*

*earning after the injury*. . . . An employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury." (Emphasis added).

The above-excerpts from 44-510e(a) make it clear that permanent partial disability has two components: functional disability and wage loss. In this appeal, Nistler's functional disability equal to an 82.8% task loss is not in issue. Likewise, his average weekly wage of $652.42 on the date of the injury is not disputed. What is in dispute is how to calculate Nistler's average weekly wage after the injury.

Nistler emphasizes the phrase "engaging in any work for wages" in 44-510e(a). He contends that phrase implies actual wages being currently earned is the proper measure for determining his post-injury average weekly earnings. He further contends whether he returned to his accommodated work part-time or full-time is not relevant to the issue of determining his post-injury wage. Conversely, Footlocker adopts the reasoning of the Board, applying K.S.A. 2005 Supp. 44-511(a)(5) and (b)(4) to calculate Nistler's post-injury wage. In tangentially addressing Nistler's argument, the Board concluded:

"As claimant was a full-time employee, even though he may have frequently worked less than a 40-hour week the average weekly wage is calculated using the base hourly wage times 40 and then adding the average overtime. This was the manner the parties apparently utilized to determine claimant's pre-injury average gross weekly wage and *the statute requires calculation of the average gross weekly wage in the foregoing manner without distinction between pre-injury or post-injury average gross weekly wage. Although the result may appear harsh nonetheless that is what the statute requires in order to compare 'apples to apples.'*" (Emphasis added.)

K.S.A. 2005 Supp. 44-511(a)(4) and (a)(5) define full- and part-time hourly employment in the following terms:

"(4) The term 'part-time hourly employee' shall mean and include any employee paid on an hourly basis: (A) Who by custom and practice or under the verbal or written employment contract in force at the time of the accident is employed to work, agrees to work, or is expected to work on a regular basis less than 40 hours per week; and (B) who at the time of the accident is working in any type of trade

or employment where there is no customary number of hours constituting an ordinary day in the character of the work involved or performed by the employee.

"(5) The term 'full-time hourly employee' shall mean and include only those employees paid on an hourly basis who are not part-time hourly employees, as defined in this section, and who are employed in any trade or employment where the customary number of hours constituting an ordinary working week is 40 or more hours per week, or those employees who are employed in any trade or employment where such employees are considered to be full-time employees by the industrial customs of such trade or employment, regardless of the number of hours worked per day or per week."

K.S.A. 2005 Supp. 44-511(b) reads:

*"The employee's average gross weekly wage for the purpose of computing any compensation benefits provided by the workers compensation act shall be determined as follows*:

. . . .

*"(4) If at the time of the accident* the employee's money rate was fixed by the hour, the employee's average gross weekly wage shall be determined as follows: (A) If the employee was a part-time hourly employee, as defined in this section, the average gross weekly wage shall be determined in the same manner as provided in paragraph (5) of this subsection; (B) if the employee is a full-time hourly employee, as defined in this section, the average gross weekly wage shall be determined as follows: (i) A daily money rate shall first be found by multiplying the straight-time hourly rate applicable at the time of the accident, by the customary number of working hours constituting an ordinary day in the character of work involved; (ii) the straight-time weekly rate shall be found by multiplying the daily money rate by the number of days and half days that the employee usually and regularly worked, or was expected to work, but 40 hours shall constitute the minimum hours for computing the wage of a full-time hourly employee, unless the employer's regular and customary workweek is less than 40 hours, in which case, the number of hours in such employer's regular and customary workweek shall govern; (iii) the average weekly overtime of the employee shall be the total amount earned by the employee in excess of the amount of straight-time money earned by the employee during the 26 calendar weeks immediately preceding the date of the accident, or during the actual number of such weeks the employee was employed if less than 26 weeks, divided by the number of such weeks; and (iv) the average gross weekly wage of a full-time hourly employee shall be the total of the straight-time weekly rate, the average weekly overtime and the weekly average of any additional compensation." (Emphasis added.)

As we have previously indicated, the Board applied the provisions of K.S.A. 2005 Supp. 44-511(a)(4) and (5) and K.S.A. 2005 Supp. 44-511(b)(4), determined Nistler was a full-time employee,

and then imputed a base wage based on 40 hours per week under the belief an "apples to apples" analysis is mandated by the statute.

We have serious problems with the Board's decision. K.S.A. 2005 Supp. 44-511(a)(4) and (5) explicitly apply to employee status *at the time of the accident,* not to part-time or full-time status after the accident. It is contrary to a plain reading of these provisions to conclude the legislature meant for them to be considered in determining an entirely different issue—post-injury wage. Second, K.S.A. 2005 Supp. 44-511(b) explicitly provides for computation of the average weekly wage *at the time of the accident.* Once again, from a plain reading of this provision, it cannot be read as an expression of legislative intent that this statute applies in determining the post-injury average weekly wage. In both instances, if that would have been the intent of the legislature, the statutory language would not have been explicitly limited to preinjury wages. We hold these provisions of K.S.A. 2005 Supp. 44-511 to be unambiguous and not applicable to calculation of the post-injury wage.

There is an additional reason we do not believe the Board's determination of Nistler's post-injury wage was correct. In reaching its decision, the Board seemingly did not consider the explicit and unambiguous provision within K.S.A. 44-510e that pertains to the issue of post-injury wage. When construing statutes to determine legislative intent, an appellate court must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Breedlove,* 285 Kan. 1006, 1015, 179 P.3d 1115 (2008).

We believe the phrase within K.S.A. 44-510e(a) "engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury," is an unambiguous statement of legislative policy that a worker's post-injury wage is to be based on actual hours worked and not determined by imputation of a hypothetical 40-hour work week. Read together with K.S.A. 2005 Supp. 44-511(b)(4), which is explicitly limited to the manner in which a worker's preinjury average gross weekly wage is to be determined, it is apparent the legislature did not intend imputation of a wholly fictional 40 hour-

work week to determine a worker's post-injury wage. We hold 44-511(b)(4) is plain and unambiguous as to its reach, and we will not read the statute to add something not readily found in it. See *Casco*, 283 Kan. at 521.

As a separate issue, Nistler challenges the sufficiency of the evidence to support the Board's finding he was a full-time employee within the meaning of K.S.A. 2005 Supp. 44-511(b)(5). The Board in deciding Nistler was a full-time employee relied on the testimonies of Nistler and Hill, the employee relations manager for Footlocker. Notwithstanding our conclusion that it is irrelevant whether Nistler was a part-time or full-time employee in determining his post-injury wage, we will briefly address this issue.

Hill testified, "[W]e tell all employees here, hourly employees here, that they work, on average, 40 hours a week. We work as many hours as business needs dictate. Some weeks it could be less than 40, some weeks it could be substantially more than 40, it just depends on the time of year and the work volume that we have, because we tend to peak when our retail stores, just before our retail stores peak, so we have a lot of seasonal variation in the work we do."

Nistler acknowledged in his testimony that he was expected to work as long as business needs dictated and that both before and after his injury he worked some weeks more than 40 hours and some weeks less than 40 hours. The Board concluded, "[Nistler] was expected regularly to work 40 or more hours per week, depending, of course, upon whether respondent had sufficient work."

Based on the testimony of Nistler and Hill, the Board concluded:

"Although claimant agreed to work on a regular basis for some weeks less than and some weeks more than 40 hours per week that does not preclude a finding that he was a full-time hourly employee. Claimant was expected to work or be available to work 40 hours a week. In addition, a determination that claimant is a full-time hourly employee under the second alternative definition provided by K.S.A. 2005 Supp. 44-511(a)(5) may be made without finding the claimant was outside both definitions of a part-time hourly employee provided by K.S.A. 2005 Supp. 44-511(a)(4). It simply must be established that claimant was employed in a trade or employment where employees are considered full-time by custom of such employment regardless of the number of hours worked per day or per week."

We do not believe the evidence supports the Board's use of the second alternative definition in K.S.A. 2005 Supp. 44-511(a)(5). There was no evidence of industrial customs of the trade or employment, which is required before that alternative definition would be applicable. However, based on Hill's and Nistler's testimonies, we do conclude there is substantial evidence Nistler was employed to work and agreed to work on a regular basis 40 or more hours per week. Accordingly, the Board did not err in concluding Nistler is a full-time hourly employee.

*Conclusion*

The Board erred in applying K.S.A. 2005 Supp. 44-511(a)(4) and (5), together with K.S.A. 2005 Supp. 44-511(b)(4), to determine Nistler's post-injury average weekly wage. Under K.S.A. 44-510e Nistler's actual wages should be used to determine his post-injury average weekly wage. Although we generally agree with the ALJ's general approach to determine Nistler's post-injury wage, a remand is necessary because the initial award does not provide sufficient facts to support the ALJ's finding of a 17.6% wage loss.

We do not presume to give further direction to the Board as to what formula or guidelines should be followed to determine Nistler's actual post-injury wage. The appropriate method should be left to the Board, whose members have the expertise and experience to formulate a sound approach. The Board's order is reversed, and the cause is remanded for further proceedings to determine Nistler's post-injury average weekly wage, his resulting wage loss, and permanent partial disability benefits.

Reversed and remanded with directions.